45038. ROYAL INDEMNITY COMPANY v. SMITH.

ARGUED JANUARY 13, 1970—DECIDED FEBRUARY 12, 1970—
REHEARING DENIED FEBRUARY 26, 1970—

*Swift, Currie, McGhee & Hiers, George W. Hart,* for appellant.

*Joe Salem, C. Lawrence Jewett,* for appellee.

HALL, Presiding Judge. Plaintiff is the proprietor of a painting business. He had a subcontract to sandblast and paint the walls of a massive steel tank under construction at an Atlanta sewage treatment site. The tank had a double wall. In the center of the inner tank was a drum to which one end of a catwalk was attached. The other end rested on rollers which ran in a groove all around the top of the outer tank. Also attached to the drum, but on the floor of the inner tank, was a radial sweeper arm which moved automatically when the catwalk was moved. The floor of the tank contained a small ramp which caused the sweeper arm to glide up and then fall back to the floor at one point in the circle. When fully operational, a motor in the drum would cause the catwalk and sweeper arm to revolve in a clockwise direction. The damage in question was caused when plaintiff's crew, in order to paint the top of the wall beneath the wheels of the catwalk, moved it around in a counterclockwise direction, which in turn ran the sweeper arm against the wrong side of the ramp and bent it. Repair of the arm cost approximately $6,000. There is no dispute on the facts or on the question of plaintiff's liability for the damage.

The insurance contract between plaintiff and defendant designated as "Comprehensive general liability insurance" provides that, "the company shall pay on behalf of the insured all sums which the insured shall be obligated to pay because of . . . (b) property damage to which this insurance applies caused by an occurrence. . ." In the section entitled "Exclusions," the policy further provides that the insurance does not apply "(i) to property damage to . . . (3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control." Defendant contends that the sweeper arm at the time of its damage was in

the care, custody and control of the plaintiff and therefore within the exclusion from coverage.

This type of exclusion is commonly found in contractor's liability policies but in the relatively few cases in which it has been litigated, there has been little agreement on its legal meaning or on its application to a particular set of facts. The cases are collected in 62 ALR2d 1242 and the annotated case is often cited for the general rule on the extent of the care, custody or control necessary to bring the exclusion into operation. This is: "Where the property damaged is merely incidental to the property upon which work is being performed by the insured, the exclusion is not applicable. . . However, where the property damaged is under the supervision of the insured and is a necessary element of the work involved, the property is in the care, custody or control of the insured." International Derrick &c. Co. v. Buxbaum, 240 F2d 536 (62 ALR2d 1237).

Having stated these general principles, the cases then proceed to ride off in all directions. Some patterns have emerged, however. Where real property is involved, the courts have been very reluctant to find care, custody or control in repairmen or subcontractors who have been engaged to work on only a portion of a structure. At the other extreme, where there is a clear bailment of chattels, care, custody or control is nearly always found. The only two Georgia cases may very well have turned on this distinction, though they do not specifically say so. In *General Ins. Co. of America v. Camden Constr. Co.,* 115 Ga. App. 189 (154 SE2d 26), this court said the exclusion was unambiguous and found that control of an asphalt truck was clearly in an unloading crew which had directed the parking of the truck at a specific place on its own work site and had then taken over all facets of unloading, fitting it with a heating apparatus and hoses and pumping the asphalt where it wanted. (The truck driver, in fact, went to sleep.) On the other hand, the Fifth Circuit Court of Appeals, applying Georgia law, called the exclusion ambiguous when faced with a factual situation involving real property. The court found no care, custody or control of a dwelling in a crew that had been hired to refinish the floors and set the house afire in the process. Boston Ins. Co. v. Gable, 352 F2d 368.

Plaintiff here is contending that as the tank was a structure firmly affixed to land, the real/personal property distinction should come into play. We believe the answer to this point was well expressed in an excellent opinion written by Judge Gaulkin of New Jersey. "Whether the property is realty or personalty, and the precise legal relationship of the insured and others to it, may be material in a given situation; but when they are, they are merely facts (more or less important, depending upon the circumstances) to be taken in conjunction with all other facts, in determining whether there is exclusion." Elcar Mobile Homes, Inc. v. D. K. Baxter, Inc., 66 N. J. Super. 478 (169 A2d 509). The opinion further stated that the incidental/ necessary element "general rules" were equally unmanageable as a guide for decision; that "the distinction is easy to make verbally, but we conceive that, when it was applied to a given state of facts, the facts have governed, and not the verbalization. The alleged distinction rarely dictated the result; rather it justified it." Id., p. 491.

Should we attempt to decide whether the sweeper arm was under the supervision of plaintiff and a necessary element of painting beneath the wheels of the catwalk, we would soon be counting angels as well as splitting hairs. We believe the better approach is to examine the purposes of the exclusion in the policy and determine whether this is the type of risk against which the insurance company had not calculated its premium. According to a senior claims adjuster, writing for other insurance men: "There are several different reasons for such an exclusion in the policy. Fundamentally, were it not for the exclusion there would be a greater moral hazard as far as the insurance company is concerned. It also eliminates the possibility of the insured making the insurance company a guarantor of its workmanship.

"The liability policy contemplates payment generally in situations where the ordinary degree of care is the measure of liability. The premium is determined on that basis. Liability for damage to property in charge of or in the care, custody or control of the insured where there is a bailment is controlled by different rules of law, and as a practical result the hazard is greatly increased.

"There is usually some form of insurance available to cover injury to or destruction of the excluded property at a higher premium which is commensurate with the risk. The exclusion is to eliminate securing the same coverage under a liability policy at cheaper rates." F. D. Cooke Jr., Care, Custody or Control Exclusions, (1959) Ins. L. J. 7, 10.

The reference to moral hazard probably applies to sections (1) and (2) of the exclusion (not reproduced here) which deal with property owned, rented to or used by the insured, i.e., "property with reference to which the insured might benefit by falsely claiming that it had been damaged by accident or by exaggerating the loss. It is difficult to conceive how the question of moral hazard could arise with reference to property belonging solely and unconditionally to others." Elcar Mobile Homes, Inc. v. Baxter, p. 486.

Cooke himself believes the "control" portions apply to bailments, where the hazards are greatly increased and upon which the premiums are not calculated. This is, of course, the one area where all courts agree the exclusion applies. The remaining purpose—to avoid a guarantee of workmanship—is the one relevant here, and in many other borderline cases. It is a perfectly legitimate purpose for an "accident" policy, but to extend the meaning of workmanship to any contact with property during the course of a job is to virtually wipe out the primary coverage. Here, for example, if plaintiff's paint job had been so poor that the tank rusted within a few months and caused a structural collapse, the exclusion would apply, as workmanship, rather than accident, would be involved. We do not believe that bending the sweeper arm had anything more to do with painting workmanship than, for instance, dropping a spray gun onto a city truck parked below. These are the kinds of occurrences against which a contractor insures himself—the "accidents" of the trade.

Therefore, considering the exclusion in the light of this purpose, we would say that only the walls of the tank which he was hired to paint, and not the interior mechanism, was in the care, custody or control of plaintiff. We recognize that breaking up structures into component parts to apply this exclusion is in

some measure illogical. However, we are forced to do this by the wording of the exclusion itself which defendant concedes is usually equated with bailment of personal property. It is within the power of the insurers to avoid the problems this method might cause by re-wording their contracts.

The trial court did not err in granting summary judgment for plaintiff.

*Judgment affirmed. Deen and Evans, JJ., concur.*