A96A1798. TIFTON MACHINE WORKS, INC. v. COLONY INSURANCE COMPANY.
(480 SE2d 37)

Judge Harold R. Banke.

After its employee damaged a client's hydraulic press, Tifton Machine Works, Inc. ("TMW") sought coverage from its insurer, Colony Insurance Company ("Colony"). Colony refused to pay, arguing that two exclusions in TMW's policy precluded coverage. TMW then commenced this action, which the trial court resolved by granting Colony's motion for summary judgment. On appeal, TMW challenges

that disposition.

The facts are essentially undisputed. The record shows that TMW contracted to move a hydraulic press from one end of a client's warehouse to another and install it for $1,360. TMW's employees placed the press on rollers and maneuvered it to the new position using the client's forklift. The press fell when one of TMW's employees knocked it or its support with the forklift. The press sustained $23,246 in damage. Damage to the client's forklift was covered by the policy at issue.

The policy insured "property damage" caused by an "occurrence," which it defined as an "accident." TMW specifically purchased a rider to cover the industrial installation of equipment and machinery. The policy simply listed this rider and did not specify its parameters. The two exclusions at issue state: "[t]his insurance does not apply to . . . [1] [p]ersonal property in the care[,] custody or control of the insured" and "[2] [t]hat particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it." *Held*:

1. Colony bore the burden of proof and persuasion to show that either of the exclusions applied. *Reliance Ins. Co. v. Walker County*, 208 Ga. App. 729, 731 (431 SE2d 700) (1993). In examining whether Colony met its burden, three rules of contract construction are applicable. First, all ambiguities in insurance contracts must be construed against the drafter, which is Colony. *Isdoll v. Scottsdale Ins. Co.*, 219 Ga. App. 516, 518 (1) (466 SE2d 48) (1995). Genuine ambiguities arise "[w]henever the phrasing of an insurance policy is so confusing that an average person could not make out the boundaries of the coverage." Id. Second, all exclusions from coverage sought to be invoked must be strictly construed. *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 615 (1) (299 SE2d 561) (1983). Third, insurance contracts are to be read in accordance with the reasonable expectations of the insureds, where possible. Id.

The "care, custody or control" language at issue is a term of art whose meaning varies depending on the underlying type of risk being insured. *Royal Indem. Co. v. Smith*, 121 Ga. App. 272, 274 (173 SE2d 738) (1970). The cases applying this language may be viewed on a continuum. In cases dealing with real property, courts have been reluctant to find care, custody or control in the hands of insureds who were hired to work on only a portion of a structure. Id. at 274. At the other end of the continuum, when there is a clear bailment of chattels, care, custody or control is nearly always found. Id.

Our courts also consider the purpose of the "care, custody or control" language, which in the instant case, as in so many borderline cases, is to avoid a guarantee of workmanship. Id. at 276; Annot., Scope of Clause Excluding from Contractor's or Similar Liability Pol-

icy Damage to Property in Care, Custody or Control of Insured, 8 ALR4th 563, 570, § 2 [a]. While this is a "perfectly legitimate purpose for an 'accident' policy, . . . [we have rejected efforts] to extend the meaning of workmanship to any contact with property during the course of a job [because the result] is to virtually wipe out the primary coverage." *Royal*, 121 Ga. App. at 276.

In our court's most recent case interpreting the language at issue, the insured contracted to paint the exterior walls of a massive sewage treatment tank on which was attached a radial sweeper arm designed to move only clockwise in the tank's interior. Id. at 273. The damage occurred when the insured moved the arm counterclockwise. Id. The dispositive question was whether the circumstances under which the damage occurred fell within the types of risk against which the exclusion was purposefully directed. Id. at 275-276; Annot., 8 ALR4th at 622. Reasoning that the exclusion was intended to protect the insurer from becoming a guarantor of the insured's workmanship, the court analytically divided the structure at issue into component parts to find that the insured controlled only the tank, which it was hired to paint, and not the radial arm, which had nothing to do with the insured's painting workmanship. *Royal*, 121 Ga. App. at 276. The *Royal* court theorized that the exclusion would have applied had the paint job "been so poor that the tank rusted within a few months and caused a structural collapse," because workmanship rather than accident, would be involved. Id. at 276. It follows that *Royal* does not demand a finding that the exclusion applies.

Moreover, in purchasing the machine installation rider, TMW reasonably could have expected coverage on activities related to machine installation. *Richards*, 250 Ga. at 615 (1). Colony's construction of the "care, custody or control" clause destroys the viability of the machine installation rider TMW purchased. How could an insured ever install a machine without taking control of it? The insurance policy itself includes no explanation of the parameters of the machine installation rider, and nothing in the policy or the rider limits coverage of machine installation to incidental damage. These facts undermine Colony's contention that the rider, which cost nearly $1,000 each policy period, applied only to incidental damage. Under this theory, it follows that Colony accepted the premiums, but provided TMW with no coverage for actually installing machinery.

Admittedly, our Supreme Court recently referred to such a "care, custody or control" clause in isolation as "clear and unambiguous." *Park 'N Go of Ga. v. United States Fidelity &c. Co.*, 266 Ga. 787, 791 (471 SE2d 500) (1996) (a bailment case with no conflicting rider). We reach a contrary conclusion, however, when reading this language in context with the machine installation rider. See Annot., 8 ALR4th at 570, § 2 [a] ("More frequently, however, it has been said that the

exclusion is ambiguous or unambiguous depending upon the various factual circumstances presented in particular cases."). Colony's failure to satisfy its burden of drafting clear and precise language revealing the reach of the rider mandates reversal.

2. This same conclusion applies to a second clause in the policy which excludes from coverage "[t]hat particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it." The purpose of this exclusionary clause, like the "care, custody or control" clause, is to avoid a guarantee of workmanship. *Glens Falls Ins. Co. v. Donmac Golf Shaping Co.*, 203 Ga. App. 508, 511 (3) (417 SE2d 197) (1992). This clause cannot be given effect without eviscerating the machine installation rider. The resulting ambiguity must be construed against Colony. *Isdoll*, 219 Ga. App. at 518.

*Judgment reversed. Pope, P. J., and Andrews, J., concur.*

DECIDED NOVEMBER 21, 1996 —
RECONSIDERATION DENIED DECEMBER 12, 1996 — ▆▆▆▆▆▆▆▆

*Reinhardt, Whitley & Wilmot, George R. Reinhardt, Jr., Thomas B. McFarland,* for appellant.
*Perry & Walters, Jesse W. Walters,* for appellee.