A05A2321. RAMPEY v. GRANGE MUTUAL CASUALTY
COMPANY.
A05A2322. NORTHWEST DRYWALL & TEXTURE COMPANY,
INC. et al. v. GRANGE MUTUAL CASUALTY COMPANY.
(629 SE2d 525)

ADAMS, Judge.

In these companion cases, Opal Rampey, Donald R. Trammell, Sr. and Northwest Drywall & Texture Company, Inc. appeal from the trial court's grant of summary judgment in favor of Grange Mutual Casualty Company in a declaratory judgment action filed by Grange in connection with a fire at Trammell's residence.

In reviewing the trial court's grant of summary judgment, we conduct a de novo review and in so doing "we view the evidence, and all reasonable conclusions and inferences drawn from it in [a] light most favorable to the nonmovant." (Punctuation omitted.) *CSX Transp. v. Deen*, 269 Ga. App. 641 (605 SE2d 50) (2004). Viewed in that light, the record shows that Trammell is the president of Northwest and maintains both the company office and his personal residence in the same 12,000-square-foot structure on Buice Road in Alpharetta. Grange issued a commercial general liability insurance policy to Northwest, listing the Buice Road address as the company's office. Although the property is titled in Trammell's name individually, most of the money used to build the house came from Northwest. The Northwest office occupies one room on the first floor of Trammell's house and is used for general office work and record storage. The company pays no rent for the use of this space.

At the relevant time, Rampey, who is Trammell's sister, was Northwest's bookkeeper and worked at the Buice Road address. Her job duties included answering the phone, retrieving and sorting the mail, preparing reports for her brother, inputting information into the computer, paying the bills and preparing records for the company's accountant. In addition, she regularly performed housekeeping duties for Trammell, including vacuuming, dusting, general straightening, washing dishes and, on occasion, cleaning the oven. As she

described it, she would clean "[u]sually good on Monday and good on Friday and then just spontaneous during the rest of the week." Rampey said that she just considered it part of her job since Trammell and she were "the only ones there." But Trammell did not view this cleaning as part of Rampey's regular job duties. He said cleaning "wasn't her specific job, you know, you got to clean my house type deal." Rather, he said that if she made a mess he expected her to clean it up; sometimes she would clean up after him while other times he would clean up after her. Rampey also helped her brother with his personal bookkeeping and bill paying. And on occasion, she assisted him by picking up his grandchildren from school or by running his personal errands. In conjunction with all these activities, Rampey was granted general access to at least the kitchen, the living room and the office area at the Buice Road address. Trammell testified that he generally cleaned his own bedroom and did his own laundry, so Rampey would not normally enter his bedroom.

On May 28, 2002, Rampey was at work when Trammell called her around lunchtime to ask her to activate the self-cleaning function on his oven before she left for the day. He had spilled something in the oven while preparing a meal for himself, but did not know how to operate the self-cleaning oven. The oven was located in the house's main kitchen. Rampey turned on the self-cleaning oven around 3:00 or 3:15 p.m. When the oven began to smoke from the self-cleaning process, Rampey turned on the down draft exhaust to disperse the fumes. She stated that she heard the fan turn on before she left the residence for the day a short time later. At some point, a fire broke out in Trammell's house, causing approximately $400,000 in damage, with the fire beginning in the kitchen and spreading to other areas of the house. Afterward a question arose as to whether Rampey had inadvertently turned on one of the stove's burners instead of, or in addition to, the exhaust fan. The fire department report determined that the fire was caused by "an unattended pot being left on the surface of the stove."

Trammell maintained a homeowner's policy on the residence through Nationwide Mutual Fire Insurance Company, and Nationwide paid Trammell's claim for the loss sustained to his home in the fire. Subsequently, Nationwide, as Trammell's subrogee, filed suit against Rampey to recover the amounts paid under the homeowner's policy. Grange then filed its declaratory judgment action, seeking a determination of whether Grange had a duty to defend and indemnify Rampey.

Under the terms of Northwest's commercial general liability policy, Grange agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies" and agreed that it would have "the

right and duty to defend the insured against any 'suit' seeking those damages." But Grange had "no duty to defend the insured against any 'suit' seeking damages for . . . 'property damage' to which this insurance does not apply."

Although Northwest was the named insured on the policy, Rampey was also considered an "insured," "but only for acts within the scope of [her] employment by [Northwest] or while performing duties related to the conduct of [Northwest's] business." But under the policy's "owned property" exclusion, no employee is considered an "insured" for

> (2) "Property damage" to property:
>
> (a) Owned, occupied or used by,
>
> (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by
>
> you, any of your "employees," any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

Grange moved for summary judgment in its declaratory judgment action on the grounds (1) that Rampey was not acting within the scope of her employment when she was cleaning the stove for her brother, and (2) even if she were, because she was in physical control of the property at the time, the owned property exclusion precluded coverage for the incident. The trial court found that an issue of fact existed as to whether Rampey was acting within the scope of her employment duties at the time of her alleged negligence. But the court concluded that this issue was immaterial and granted summary judgment on the ground that "the undisputed facts show that Opal Rampey was exercising physical control over the property as an employee of Northwest [Drywall] & Texture Company, Inc. at the time of her alleged negligent acts and, therefore, is excluded from coverage under the terms of the policy. . . ." Rampey, Trammell and Northwest contend on appeal that the facts in the case do not support such a finding.

In considering this issue, our starting point must be the policy language. "An insurance policy is governed by the ordinary rules of contract construction. The hallmark of contract construction is to ascertain the intention of the parties. However, when the terms of a written contract are clear and unambiguous, the court is to look to the contract alone to find the parties' intent." (Citations omitted.) *Park 'N Go of Ga. v. U. S. Fidelity &c. Co.*, 266 Ga. 787, 791 (471 SE2d 500) (1996). Thus, we look to the language of the policy to determine

whether this is the type of risk that the policy was intended to cover. *Royal Indem. Co. v. Smith*, 121 Ga. App. 272, 275 (173 SE2d 738) (1970).

It is clear that the policy was intended to provide coverage only for acts occurring within the scope of employment or duties performed in connection with Northwest's business. And we agree with the trial court that an issue of fact exists as to whether Rampey was acting within the scope of her employment when she operated the stove at Trammell's direction. Rampey's varied roles as sister and as employee were not clearly defined. Her brother paid her a salary to be the bookkeeper for Northwest, and also expected her to do cleaning and occasionally to run other errands for him during working hours. Thus, it is for the jury to decide whether her actions in turning on the self-cleaning oven were part of her paid duties as a Northwest employee.

Moreover, it is apparent that the owned property exclusion was intended to exclude insurance coverage for property owned or controlled by the defined insureds, including Northwest and its employees, leaving the policy to cover only liability to third parties. See *Carter v. Early American Ins. Co. &c.*, 191 Ga. App. 820, 821 (383 SE2d 185) (1989). Thus, coverage is excluded for those risks "that the insured may be in the best position to prevent." *King County v. Travelers Ins. Co.*, 1996 WL 257135 (W.D. Wash. 1996).

But we disagree with the trial court's conclusion that the issue of whether Rampey was in control of the damaged property can be determined as a matter of law. Trammell, ostensibly a third party to the Grange insurance policy,[1] owned the entire house. But Northwest, the named insured and a separate corporate entity, occupied a portion of the house in connection with its drywall business, although it paid no rent for this privilege. Additionally, the house was both Rampey's regular place of employment and her brother's home. The evidence indicated that as a Northwest employee she normally would have used only certain rooms. But there is no evidence that she was excluded from the remainder of her brother's house, although Trammell stated that she would have had no reason to go into his bedroom because he did his own laundry and cleaned his own room. At the time of her alleged negligence, she was cleaning the oven in an area of the house to which she had regular access, both as a Northwest employee and as a family member.

---

[1] Grange did not assert below and does not assert on appeal that this exclusion applies because the damaged property was owned, occupied or used by Trammell and accordingly we do not address that issue.

Had the damage been limited to this portion of the house, the exclusion would have applied,[2] but the damage from the fire extended well beyond that area. If she controlled the entire house at the time of the incident, no coverage would be afforded under the Grange policy. This is true whether or not she was acting within the scope of her employment, because the exclusion applies to property over which an employee is exercising control "for any purpose." But if she is found to have controlled only a portion of the house, then the exclusion would apply only to that portion. See *Royal Indem. Co. v. Smith*, 121 Ga. App. at 276-277 (exterior walls of sewage tank that contractor was hired to paint fell under owned property exclusion, but interior mechanism of tank did not); *Boston Ins. Co. v. Gable*, 352 F2d 368 (5th Cir. 1965) (floors that workers were hired to refinish fell under owned property exclusion, but remainder of house did not).

Thus, we find that a jury issue exists as to whether, at the time of the incident, Rampey controlled only those portions defined for Northwest's use or whether, as a Northwest employee or as Trammell's sister, she controlled the house as a whole. Accordingly, we reverse the trial court's order granting summary judgment to Grange.

*Judgment reversed. Smith, P. J., and Ellington, J., concur.*

DECIDED MARCH 29, 2006 — 

*Zachary & Segraves, William E. Zachary, Jr.*, for appellant (case no. A05A2321).

*Patterson & Kaye, Arnold S. Kaye, Salina M. Kennedy, J. Robert Thompson*, for appellants (case no. A05A2322).

*Moore, Clarke, DuVall & Rodgers, Gerald R. Ryan, Jr., Luanne Clarke*, for appellee.

---

[2] See *Carter v. Early American Ins. Co. &c.*, 191 Ga. App. at 821.