A07A1455. ATLANTIC TITLE INSURANCE COMPANY v. AEGIS FUNDING CORPORATION et al.

(651 SE2d 507)

PHIPPS, Judge.

This case arises out of three residential real estate closings conducted by attorney Constance Thomas. Thomas represented the purchase money lender at each closing. In connection with each closing, the lender purchased a title insurance policy from Atlantic Title Insurance Company (Atlantic). After the closings, each lender made claims on their respective policies because Thomas had not paid off pre-existing liens encumbering the properties. Instead of paying the claims, Atlantic brought this suit against Thomas and the lenders. The lenders filed counterclaims against Atlantic seeking statutory damages and attorney fees under OCGA § 33-4-6 based on Atlantic's bad faith refusal to indemnify the lenders for their losses.

The trial court awarded summary judgment to the lenders on their claims for damages but reserved attorney fee issues for jury trial. Atlantic appeals. We affirm.

OCGA § 33-4-6 (a) provides:

> In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

In addition, "[t]he action for bad faith shall not be abated by payment after the 60 day period. . . ."[1] And "[t]he amount of any reasonable attorney's fees shall be determined by the trial jury. . . ."[2]

"To support a cause of action under OCGA § 33-4-6, the insured bears the burden of proving that the refusal to pay the claim was made in bad faith."[3] "Bad faith is shown by evidence that under the terms of the policy upon which the demand is made and under the facts surrounding the response to that demand, the insurer had no good cause for resisting and delaying payment."[4] "Good faith is determined by the reasonableness of nonpayment of a claim. Because the damages are in the nature of a penalty, the statute is strictly construed and the right to such recovery must be clearly shown."[5] Although the question of good or bad faith is ordinarily for the jury, the insurer is entitled to judgment as a matter of law if it has reasonable grounds to contest the claim or the question of liability is close.[6]

According to the closing documents in this case, the lenders at the respective closings were predecessors in interest to First National Bank of Arizona (FNBA), BancMortgage, a division of National Bank of Commerce (Banc), and Aegis Funding Corporation (Aegis). At each closing, Thomas obtained either a policy, or commitment to issue a

---

[1] OCGA § 33-4-6 (a).

[2] Id.

[3] *Allstate Ins. Co. v. Smith*, 266 Ga. App. 411, 413 (2) (597 SE2d 500) (2004) (citation and punctuation omitted).

[4] *Ga. Intl. Life Ins. Co. v. Harden*, 158 Ga. App. 450, 454 (2) (280 SE2d 863) (1981) (citation, punctuation and emphasis omitted).

[5] *Fla. Intl. Indem. Co. v. Osgood*, 233 Ga. App. 111, 115-116 (3) (503 SE2d 371) (1998) (punctuation and footnotes omitted).

[6] Id.

policy, of title insurance from Atlantic ensuring that the lender received a first priority security interest as collateral for the loans, which were in the respective amounts of $380,000, $102,600, and $499,500. At the time of each closing, each property also served as collateral for an unpaid purchase money loan taken out by the seller. It is undisputed that although FNBA's, Aegis's, and Banc's predecessors in interest remitted the loan proceeds to Thomas in order for her to pay off the prior loans, none of the prior purchase money lenders received any of the payoffs. As a result, none of the prior liens was cancelled and none of the present lenders acquired the priority security interests guaranteed by Atlantic.

Accordingly, the lenders made demands on Atlantic for payments under the policies. Atlantic asserts that, under the policies, it had a right to investigate the facts underlying each claim before paying any claims. Initially, Atlantic contacted Thomas, who insisted that she had paid off the prior loans. Atlantic requested the closing files from her, but she refused to provide them. Atlantic then sought, unsuccessfully, to subpoena checks from a bank trust account maintained by Thomas.

Instead of paying the lenders' claims of loss, Atlantic brought this suit naming Aegis, Banc, FNBA, and Thomas as co-defendants. Thomas answered Atlantic's complaint, alleging that in the closings she had disbursed funds received by the lenders in accordance with their instructions. Each lender filed a counterclaim against Atlantic seeking bad faith penalties under OCGA § 33-4-6. And each lender moved for summary judgment.

Following the hearing on the lenders' motions for summary judgment, Thomas submitted to deposition questioning under order of the trial court. Consistent with her answer, she testified that she had paid at least two of the outstanding mortgages and submitted supporting documentation. Atlantic later filed a response to the lenders' motions for summary judgment, asserting that Thomas's deposition testimony and supporting documentation raised material issues as to whether she had paid off the preexisting loans. But Atlantic later conceded that it was liable to the lenders for the face amounts of the policies and tendered those sums into the court registry, based on its discovery of "other facts" that led it to conclude that Thomas "had likely not in fact" disbursed the proceeds of the loans in accordance with the insured lenders' instructions. The tender did not occur, however, until over a year after the last counterclaim seeking bad faith penalties against Atlantic was filed.

The trial court found that the policies issued by Atlantic clearly provided coverage for the title defects of which Atlantic had been informed and therefore, as a matter of law, Atlantic had acted in bad faith in delaying payment of the claims. Consequently, the court

awarded summary judgment to the lenders on their claims for bad faith penalties. But the court ruled that the lenders' claims for attorney fees presented material issues of fact for jury trial and, therefore, denied the lenders' motion for summary judgment on those claims.

1. Atlantic first contends that the trial court erred in ruling that, as a matter of law, it is liable for bad faith penalties under OCGA § 33-4-6 (a).

The standard form policies issued by Atlantic to the lenders insured against loss or damage incurred by reason of, among other things, unmarketability of title, the unenforceability of the lien of the insured mortgage upon the property, and the priority of any lien or encumbrance over the lien of the insured mortgage. The policies gave Atlantic the right, at its own cost, to initiate any action or proceeding, or take any other action which, in its opinion, would be necessary or desirable to perfect title to the insured property or lien. And although the policies also gave Atlantic the option to pay the claim or tender the full amount of the insurance policy, together with any costs, attorney fees, and expenses incurred up to the time of such payment or tender, Atlantic's tender of money into the court registry did not include costs, attorney fees, or expenses. Nor was it made within 60 days of the lenders' demands, as is required to avoid liability for bad faith penalties under OCGA § 33-4-6 (a).

Atlantic, nonetheless, argues that it had a reasonable basis for delaying payment of the claims until it had an opportunity to determine whether the title defects upon which the claims were based could be cured. Atlantic did not, however, take any action to cure the title defects, as by bringing suits to quiet title against the prior lienholders. That distinguishes this case from cases such as *First Fed. Sav. Bank v. Stewart Title Guar. Co.*[7] (relied on by Atlantic). In fact, in its demand letters, Banc informed Atlantic that following closing of the transaction in which it was involved, the putative seller had filed a notice of fraud in the county in which the property was located showing that he had not, in fact, sold his residence to any person or entity and that the warranty deed purportedly executed by him was a fraudulent conveyance. And documentation of record shows that Atlantic was informed that the holder of the mortgage to which the Aegis security deed was subordinate had actually foreclosed on the property, even though Atlantic denied any such knowledge in its discovery responses. It similarly appears that a title search would have revealed that FNBA did not have a priority lien either, as the

---

[7] 451 SE2d 916 (S.C. App. 1994).

buyer's warranty deed and the lender's security deed in that transaction were never recorded. Moreover, Thomas's claim that she paid off the prior loans was belied by her refusal to provide Atlantic with proof of her actions.

In this case, as in *Fidelity Nat. Title Ins. Co. v. Matrix Financial Svcs. Corp.*[8] (relied on by the trial court), the lenders thus obtained title insurance policies to guard against defects in title; the policies required the insurer to pay, or otherwise cure the title problem, in the event of such defects; and such defects clearly existed, triggering the insurer's obligations under the policies.[9] Yet Atlantic did not comply with its obligations until after it had named its policyholders as defendants in this protracted lawsuit. Consequently, in this case, as in *Fidelity*, the trial court was authorized to find that in filing this suit the insurer was relying "on fanciful allegations of factual conflict to delay or avoid legitimate claims payment."[10]

2. Atlantic contends that the trial court erred by implicitly ruling that, as a matter of law, Atlantic must pay OCGA § 33-4-6 damages in the amount of 50 percent of the lenders' losses.

Atlantic argues that a jury must decide the percentages for which it is liable as a bad faith penalty. This argument is without merit. "[T]he clear language of the statute provided for a payment of either 50 percent of the amount of the loss . . . or $5,000, whichever was greater."[11] Atlantic's argument to the contrary is based on an inaccurate parsing of the statute.

3. Atlantic charges the trial court with error to the extent that it ruled that the lenders could recover their expenses of litigation under OCGA § 13-6-11.

Although Atlantic correctly argues that "OCGA § 33-4-6 is the exclusive remedy for bad faith denial of [insurance] benefits so that litigation expenses under OCGA § 13-6-11 are not recoverable[,]"[12] the trial court did not commit any reversible error as it ordered a jury trial on issues relating only to attorney fees and not other litigation expenses.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

---

[8] 255 Ga. App. 874 (567 SE2d 96) (2002).

[9] Id. at 880-881 (2).

[10] *Cincinnati Ins. Co. v. Kastner*, 233 Ga. App. 594, 596 (1) (504 SE2d 496) (1998) (citation, punctuation and emphasis omitted).

[11] *Byrd v. Regal Ins. Co.*, 275 Ga. App. 779, 780 (621 SE2d 758) (2005).

[12] *United Svcs. Auto. Assn. v. Carroll*, 226 Ga. App. 144, 149 (5) (486 SE2d 613) (1997) (citation omitted).

DECIDED AUGUST 31, 2007 — 

*Smith, Gambrell & Russell, Aaron P. M. Tady*, for appellant.

*Dickenson & Gilroy, Monica K. Gilroy, Thompson, O'Brien, Kemp & Nasuti, John P. O'Brien, Lisa A. Frank, Kitchens, Kelley & Gaynes, Mark A. Kelley, Stephen V. Kern*, for appellees.