## A08A1563. OWNERS INSURANCE COMPANY v. SMITH MECHANICAL CONTRACTORS, INC.
### (670 SE2d 213)

ADAMS, Judge.

Plaintiff/appellee Smith Mechanical Contractors, Inc. filed this action for indemnification against its insurer, defendant/appellant Owners Insurance Company, seeking to recover amounts it paid to its customer, Birdsong Peanut Company, after Birdsong's peanut cleaner was damaged while Smith Mechanical was moving it with its crane. Owners filed a motion for summary judgment, which the trial court denied. Smith Mechanical then filed a motion for summary judgment and Owners filed an "alternative" motion for summary judgment in response to Smith Mechanical's motion. The trial court granted summary judgment to Smith Mechanical and Owners filed the present appeal. We now affirm.

In its order on the parties' motions for summary judgment, the trial court included an extensive recitation of the relevant facts, and we adopt it here, as follows:[1]

> Smith Mechanical . . . is a company that repairs and upgrades equipment. Owners . . . issued a commercial general liability insurance policy to Smith Mechanical insuring, among other things, a crane Smith Mechanical owned and operated in its business. . . . Birdsong [Peanut Company] contracted with Smith Mechanical to remove [a commercial peanut] cleaner from its foundation and set it on a truck arranged by Birdsong for shipment to another Birdsong plant in Texas. While Smith Mechanical was using its crane to move the cleaner, the asphalt beneath the crane's left front outrigger caved-in, causing the crane to tip forward and drop the cleaner to [the] ground. The crane then fell onto the peanut cleaner. Bobby Royce Smith, Smith Mechanical's principal, arranged for the purchase of a replacement peanut cleaner for $27,500.00. Birdsong purchased the replacement cleaner for $27,500.00 and Bobby Royce Smith gave Birdsong a promissory note for $27,500.00 which Smith Mechanical repaid to Birdsong in

---

[1] We have omitted references to the lower court record included in the order.

two payments, along with interest. Smith Mechanical timely submitted a claim and required proofs of loss to Owners for indemnification under its commercial general liability insurance policy. Owners paid Smith Mechanical for damage to the crane but denied coverage for damage to the cleaner. Owners never provided a defense against any claims that Birdsong asserted against Smith Mechanical. Smith Mechanical brought this action to recover indemnity under the policy for property damage to the cleaner.

In relevant part, the policy at issue here provides that Owners will pay those sums that Smith Mechanical becomes "legally obligated to pay as damages" because of "property damage" caused by an "occurrence," which is further defined as an "accident." The policy defines "mobile equipment" to include "power cranes" and Smith Mechanical's hydraulic crane is separately listed as scheduled equipment covered by the policy. The policy specifically excludes coverage for property damage arising from the use of the "mobile equipment" in a prearranged racing, speed or demolition contest or stunting activity. The policy also expressly excludes liability for "property damage to . . . [p]ersonal property in the care, custody or control of the insured." It is this exclusion that Owners contends applies in the present case.

> In construing an insurance contract, a court must consider it as a whole, give effect to each provision, and interpret each provision to harmonize with each other. The policy should be read as a layman would read it. While under Georgia law an insurance company is free to fix the terms of its policies as it sees fit, so long as they are not contrary to the law, and it may insure against certain risks while excluding others, exclusions will be strictly construed against the insurer and in favor of coverage. The risk of any lack of clarity or ambiguity in an insurance contract must be borne by the insurer.

(Citations and punctuation omitted.) *Southern Trust Ins. Co. v. Dr. T's Nature Products Co.*, 261 Ga. App. 806, 807 (1) (584 SE2d 34) (2003).

Owners bore the burden of proof and persuasion to show that the exclusion applied. *Tifton Machine Works v. Colony Ins. Co.*, 224 Ga. App. 19, 20 (1) (480 SE2d 37) (1996).

> In examining whether [Owners] met its burden, three rules of contract construction are applicable. First, all ambigu-

> ities in insurance contracts must be construed against the drafter. . . . Genuine ambiguities arise whenever the phrasing of an insurance policy is so confusing that an average person could not make out the boundaries of the coverage. Second, all exclusions from coverage sought to be invoked must be strictly construed. Third, insurance contracts are to be read in accordance with the reasonable expectations of the insureds, where possible.

(Citations and punctuation omitted.) Id.

1. Owners argues that the trial court erred by finding, as a matter of law, that the "care, custody or control" provision did not exclude coverage for damage to Birdsong's peanut cleaner.

> The "care, custody or control" language at issue is a term of art whose meaning varies depending on the underlying type of risk being insured. *Royal Indem. Co. v. Smith*, 121 Ga. App. 272, 274 (173 SE2d 738) (1970). The cases applying this language may be viewed on a continuum. In cases dealing with real property, courts have been reluctant to find care, custody or control in the hands of insureds who were hired to work on only a portion of a structure. Id. at 274. At the other end of the continuum, when there is a clear bailment of chattels, care, custody or control is nearly always found. Id.

*Tifton Machine Works*, 224 Ga. App. at 20 (1).

Citing *Park 'N Go of Ga. v. United States Fidelity &c. Co.*, 266 Ga. 787, 790 (471 SE2d 500) (1996), and *Royal Indem. Co.*, 121 Ga. App. at 276, the trial court held that the undisputed evidence of record showed that there was no bailment of the peanut cleaner.

> A bailment occurs when there is "a delivery of goods or property upon a contract, express or implied, to carry out the execution of a special object beneficial either to the bailor or bailee or both and to dispose of the property in conformity with the purpose of the trust." OCGA § 44-12-40. That is, a bailment relationship is created when one party is involved in an undertaking for a consideration to safeguard the personal property of another and exercises complete dominion at all times over the property.

*Park 'N Go*, 266 Ga. at 790. In its initial order denying Owners'

motion for summary judgment, the trial court found there was no bailment of the peanut cleaner because there was no evidence that Birdsong delivered exclusive possession of the cleaner to Smith Mechanical. The trial court based its finding on the fact that

> Birdsong's maintenance supervisor was in charge of the job the Plaintiff contracted to do, and had authority to stop, start, speed up, slow down, and otherwise control the job. . . . The Plaintiff never took the cleaner off Birdsong's job site, and it was never contemplated that the Plaintiff would do so. The Plaintiff's job was simply to lift the cleaner from its foundation, set it on the ground, and then hoist it onto a truck for shipment, once Birdsong arranged for a truck to ship it to another Birdsong plant in Texas. Birdsong retained legal custody and control of its cleaner at all times.

Based on these and other facts of record, we agree with the trial court that no bailment relationship was created in this case. *Mossie v. Pilgrim Self-Service Storage*, 150 Ga. App. 715 (2) (258 SE2d 548) (1979); *Shingler Motors v. West*, 127 Ga. App. 230, 231 (1) (193 SE2d 60) (1972).

However, that does not end our inquiry. Although situations involving clear cases of bailment are the one area where all courts agree the exclusion applies, "[o]ur courts also consider the purpose of the 'care, custody or control' language, which in the instant case, as in so many borderline cases, is to avoid a guarantee of workmanship." *Tifton Machine Works*, 224 Ga. App. at 20-21 (1).

Considering the exclusion in light of this purpose, we find that the damage to the peanut cleaner was not because of any failure of Smith Mechanical to perform the job it contracted to do in a workmanlike manner. Rather, as the trial court, quoting *Royal Indem. Co.*, found: "[T]o extend the meaning of workmanship to any contact with property during the course of a job is to virtually wipe out the primary coverage." Id. at 276. Dropping the cleaner because the asphalt under the crane's outriggers caved in is one of the "kinds of occurrences against which a contractor insures himself — the 'accidents' of the trade." Id.[2] The trial court did not err by finding that the care, custody or control provision did not apply to exclude

---

[2] Owners also urges us to adopt the reasoning of a Texas district court holding that the exclusion precluded coverage to the insured under very similar facts. *Blue Marlin Constr. Co. v. Gen. Star Indem. Co.*, 16 FSupp.2d 762 (S.D. Tex 1998). However, in light of our prior precedent on this issue, and considering that the Texas court itself acknowledged that the facts there presented a "very close question" id. at 766, we are not persuaded that we should reach the same result in this case.

coverage under the facts of this case.[3]

2. Owners argues, in the "alternative" that, if the peanut cleaner remained under Birdsong's "all-encompassing" and exclusive control, then Smith Mechanical was not under a "legal obligation" to pay for the damage to the peanut cleaner. In other words, if the peanut cleaner was in the care, custody or control of its owner at the time of the accident, then Smith Mechanical was not "legally obligated to pay as damages" any sums to replace the cleaner. Thus, Owners argues Smith Mechanical's payment to Birdsong was in effect a voluntary payment which was not covered under the policy.

Although we found that no bailment relationship was created in this case, it does not follow that Birdsong's control of the cleaner remained exclusive or "all encompassing." In any event, that is not the test to be applied in deciding this issue. We decline to adopt Owners' construction of the policy, which would result in an evisceration of coverage anytime the care, custody and control provisions were invoked in situations similar to the case at hand. If a bailment is created, under Owners' argument, then the exclusion applies to preclude coverage; but if it is judicially determined that no bailment is created, then the insurer can posit the "alternative" argument that its insured was not legally obligated to pay damages to the owner of the damaged property and thus the insurer is not required to indemnify its insured. We do not find that to be a reasonable interpretation of this insurance policy.

3. Lastly, Owners also argues that even if coverage is afforded under the policy, Smith Mechanical failed to provide sufficient proof of damages. At the outset we note that no transcript was prepared of the hearing on the motions for summary judgment and therefore this Court assumes that the evidence presented supported the trial court's judgment. *Cotton v. Ray*, 276 Ga. App. 682 (624 SE2d 271) (2005).

Although we do not have the benefit of a transcript, in its brief in opposition to Smith Mechanical's motion for summary judgment, Owners made the following argument concerning the issue of damages:

> In this case, the damages for which [Smith Mechanical] seeks recovery is the cost it incurred in replacing Birdsong's damaged peanut cleaner. However, [Smith Mechanical] has

---

[3] We take this opportunity to reiterate our admonition in *Royal Indem. Co.*, 121 Ga. App. at 277 – "[i]t is within the power of the insurers to avoid the[se] problems . . . by re-wording their contracts." In this regard we note also that there were no exclusions for routine use of the power crane in operations other than those specifically enumerated in the policy as set forth above.

retained the original, albeit damaged, peanut cleaner. There has been no evidence presented regarding the salvage value of the damaged cleaner, for which [Owners] would be entitled to a set off.

In addressing this issue, the trial court found that Owners had been given several opportunities over a sufficient length of time to inspect the cleaner to determine its salvage value but had not yet done so at the time of the hearing. Thus, the trial court held it would not re-open discovery to allow Owners to inspect the cleaner and Owners has not enumerated this holding as error. In light of the foregoing, we find no merit to Owners' contention that the award of damages to Smith Mechanical must be reversed.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 20, 2008 — 

*Talley, French & Kendall, Michael C. Kendall, Maureen E. Murphy*, for appellant.

*William S. Stone, David W. Boone, Simone R. Siex, Andy J. Williams, Jr., Aileen R. Page*, for appellee.