## A09A1200, A09A1201, A09A1202. TRANSPORTATION INSURANCE COMPANY v. PIEDMONT CONSTRUCTION GROUP, LLC (three cases).
### (686 SE2d 824)

SMITH, Presiding Judge.

In the main appeal presented here, Transportation Insurance Company denied not only coverage but a defense under a policy of liability insurance issued to a general contractor, based upon a novel and radical interpretation of a single Georgia case. This egregious conduct warrants not only affirmance but the imposition of penalties for frivolous appeal. Only the fact that the trial court did not enter a judgment for a sum certain prevents the assessment of an additional ten percent penalty under OCGA § 5-6-6.[1]

The main issue in this case concerns the issue of coverage under a Comprehensive General Liability (CGL) insurance policy issued by Transportation Insurance Company (Transportation) to Piedmont Construction Group, LLC (Piedmont). A fire extensively damaged a building at Middle Georgia College while Piedmont was performing renovation work in the building, and when the Board of Regents of the University System of Georgia sued Piedmont for damages to the building, Piedmont sought coverage under the policy. Transportation denied both coverage and a defense based upon the business-risk exclusion in the policy, and Piedmont filed a third-party claim against it.

In the main appeal, Transportation appeals from the trial court's grant of summary judgment in favor of Piedmont on the issue of coverage and the award of damages and attorney fees under OCGA § 33-4-6. The trial court issued a comprehensive 43-page order analyzing in detail the facts, the law, and Transportation's contentions, and rejecting Transportation's reliance on the business-risk exclusion. We can add little to that thorough and well-reasoned analysis, other than to commend the trial court for its attention to detail in reaching the correct conclusion that Transportation's

---

[1] "When in the opinion of the court the case was taken up for delay only, 10 percent damages may be awarded by the appellate court upon any judgment for a sum certain which has been affirmed. The award shall be entered in the remittitur."

"business-risk exclusions do not apply to the entire building" and to affirm its grant of summary judgment in Piedmont's favor. Moreover, because Transportation has ignored the substantial body of law on business-risk exclusions and appears to have filed this appeal solely for the purpose of delay, we assess frivolous appeal penalties pursuant to Court of Appeals Rule 15 (b).

In the second, related appeal, we affirm the trial court's determination that Transportation is liable for bad faith penalties under OCGA § 33-4-6 (a) for refusal to provide Piedmont indemnification or a defense. But because Piedmont concedes that amount must be determined in the first instance by a jury, we reverse its determination as to the amount of attorney fees incurred by Piedmont.

Finally, we dismiss as moot the third related appeal of a supersedeas bond.

## Case No. A09A1200

To briefly restate the relevant facts, Piedmont contracted with the Board of Regents to renovate Browning Hall, a historic building on the campus of Middle Georgia College in Cochran. During the renovation, a plumbing subcontractor soldering copper pipes in Room 143 accidentally ignited a wooden wall stud, starting a fire which completely destroyed the roof and entire second floor of the building and caused extensive damage to the rest of the structure.

1. The trial court correctly stated the controlling issue to be the interpretation of two business-risk exclusions in Transportation's policy:

> 2. Exclusions
> This insurance does not apply to: . . .
> (j) (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Transportation argued below and on appeal that the phrase "that particular part of real property" refers to the entire building which was being renovated because Piedmont was performing work throughout Browning Hall. Piedmont responds that the renovation was limited to less than one-fifth of the building and that the damage was not due to "defective workmanship" resulting only in damage to the contractor's work, a contract claim, but an "unforeseeable

accident" resulting in damage to other property, a claim sounding in tort.

The Regents have filed an amicus curiae brief, reiterating that Georgia law plainly makes the distinction between covered and excluded property in a CGL policy by "whether the damage results in contract or tort liability for the insured," and pointing out that Transportation's interpretation of the business-risk clause would render "the millions of dollars spent on CGL premiums during the past three years by Regents on billions of dollars worth of construction" completely illusory and worthless. The Association of General Contractors of America (AGCA) and the Georgia Branch of the AGCA have also filed an amicus brief, explaining in detail the origins and purpose of the CGL policy and revisions to the business-risk clause, and pointing out that Transportation's expansive reinterpretation of this exclusion to extend beyond "that particular part" of the insured's work to other property will cause "a radical departure from traditional means of providing insurance coverage for construction risks that virtually eliminates that coverage."

In a careful and exhaustive review of the Georgia law governing the construction of insurance contracts, CGL policies in general and the business-risk exclusion in particular, the trial court correctly concluded that the Georgia courts have clearly defined the risks that business-risk exclusions are intended to remove from coverage:

> Georgia courts typically examine the following facts of each case when reviewing business-risk exclusions: First, the type and extent of construction work that the contractor is performing at the time of the accident **and**, second, the extent that the damages resulting from the contractor's accident may exceed the contractor's contractual duties. In short, the court asks itself, "Will the payment of insurance proceeds effectively cause an insurance company to guarantee the contractor's work?" If the answer is yes, the business-risk exclusions apply and the claim is denied. However, if the court finds that the payment of proceeds results from a negligent act causing damage above and beyond the original contractual obligations or to other property, the business-risk exclusions do not apply and the insurance company should pay the claim.

Bearing these principles in mind, the trial court correctly concluded that the term "that particular part" in the exclusions referred not to Browning Hall as a whole, but "only to the room and the plumbing on which [the subcontractor] was working prior to the fire starting. Thus, the court interprets the phrase to mean that Room 143 and the

plumbing are 'that particular part' of Browning Hall (which constitutes the whole) on which the work was being performed.'' The trial court continued:

> [T]he damage to the rest of the building clearly resulted from an unpredictable business accident that consequently created additional work outside the original contractual obligations. For example, Piedmont had to execute several change orders that modified the original contract and had to replace the relatively new roof.
>
> Clearly, Piedmont does not ask Transportation . . . to guarantee the quality of the work it already performed, but rather for damages caused by an accidental fire due to its subcontractor's negligence. Thus, Transportation breached its contract with Piedmont when it refused to indemnify it for the damages caused by the fire.

Other than authority from other states, Transportation relies almost exclusively on the single Georgia decision of *Sapp v. State Farm Fire & Cas. Co.*, 226 Ga. App. 200 (486 SE2d 71) (1997), in which we held that a business-risk exclusion unambiguously excluded certain renovation work from coverage.[2] But the trial court, on multiple grounds, correctly distinguished Transportation's "stubbornly relying" on this decision.

First, as the trial court observed, the defendant contractor in *Sapp* undertook to install hardwood floors in an existing home, and also to perform work on the crawlspace "to provide adequate ventilation and moisture barriers" to protect the floors. Id. at 201. But the floors quickly began to warp due to a buildup of moisture and improper installation. Sapp sought recovery "for the costs of removing and replacing the flooring" and to restore his home to its condition prior to the defendant contractor's work. Id. at 201. We held that

> all his claimed damages relate directly to the cost of repairing or replacing the alleged negligent work of defendants . . . , i.e., the failure to correct the moisture problem and the negligent installation of the hardwood floors. Any damages to the house during the removal of the hardwood

---

[2] On appeal, Transportation makes much of the holding in *Sapp* that the clause was unambiguous, contending that our holding there must mean that the business-risk exclusion must be held unambiguous in all cases and in all circumstances. But we have frequently recognized that an "exclusion is ambiguous or unambiguous depending upon the various factual circumstances presented in particular cases." (Citation and punctuation omitted.) *Tifton Machine Works v. Colony Ins. Co.*, 224 Ga. App. 19, 21-22 (480 SE2d 37) (1996).

> floor and the restoration of the house to the condition it was prior to [defendants'] work were merely incidental to his claimed damages that defendants . . . negligently performed the services for which appellant contracted.

Id. at 204 (1) (b). This is factually inapposite to the case before us, in which damages were not limited to repairing or replacing the work for which the Regents contracted, due to negligent installation. This case is not limited to damages to "that particular part of real property" on which the plumbing subcontractor was working when it accidentally started a devastating fire. It involves damages to the entire building, including portions as to which Piedmont had not originally contracted to perform any work.

Transportation's proposed interpretation of the business-risk exclusion "would make coverage for such actions merely illusory, despite the fact that such coverage is expressly provided for in the policy." *Isdoll v. Scottsdale Ins. Co.*, 219 Ga. App. 516, 518 (1) (466 SE2d 48) (1995). See also *Tifton Machine Works v. Colony Ins. Co.*, 224 Ga. App. 19, 22 (480 SE2d 37) (1996) (purpose of virtually identical business-risk exclusion "is to avoid a guarantee of work-manship" and it cannot be used to "eviscerate" coverage). The trial court did not err in granting summary judgment to Piedmont on the issue of coverage.

2. Transportation also appeals the trial court's finding that it is liable for bad faith penalties and attorney fees, asserting simply that since the trial court erred in finding liability under the policy, it should not be liable for those penalties. This is incorrect for the reasons stated above.

In addition, while the existence of bad faith under OCGA § 33-4-6 is ordinarily a question for the jury, where the facts with regard to the insurer's conduct are clear and undisputed, the insurer may be liable for bad faith penalties under that Code section as a matter of law. *Atlantic Title Ins. Co. v. Aegis Funding Corp.*, 287 Ga. App. 392, 395-396 (1) (651 SE2d 507) (2007). Once again, the trial court performed a thorough and exhaustive analysis of Transporta-tion's handling of Piedmont's claim, considering the records and correspondence between the parties as well as the testimony of various individuals by affidavit. Particularly noteworthy is the trial court's finding that Transportation "simply submitted no admissible evidence to defend itself on Piedmont's bad faith claims."

With respect to Transportation's refusal to provide a defense, the trial court noted that the insurer neglected even to protect itself by defending under a reservation of rights while filing a declaratory judgment action in order to determine the extent of coverage and its

duty to defend. The trial court went on to observe:

> The combination of Georgia law interpreting an insurance company's duty to defend broadly and the statute favors an insurance company erring on the side of the insured and providing a defense. If an insurance company chooses NOT to provide a defense, it assumes the risk that it is not absolutely right that the claim does not fall under the policy, [and] it exposes itself to a bad faith claim, even if the insured's claim is a "doubtful question of law."
>
> In the present case, Transportation offered NO explanation whatsoever for not providing a defense other than that its J (5) business-risk exclusion abrogated its duty to defend Piedmont. By ignoring the obvious possibility that *at least a portion of Browning Hall* was covered by the policy notwithstanding the business-risk exclusion, Transportation took the risk of not providing a defense and must now suffer the consequences.
>
> The Court finds Transportation's conduct of not providing a defense especially egregious given that, by the time of the hearing, Piedmont had spent nearly $250,000 in attorney fees defending itself from the Regents' suit and pursuing its bad faith claim against its insurance companies.
>
> If Piedmont had been a much smaller construction company, the huge financial burden of finishing Browning Hall, coupled with the attorney fees Transportation forced it to incur as a result of its breach, would likely have put it completely out of business. The financial burden experienced by Piedmont in the current case only adds credence to the policy of this state to strongly favor an insurance company providing a defense to its insured in close cases (which this case is not).

With respect to Transportation's refusal to indemnify, the trial court found

> Transportation's position that it owed absolutely no coverage to Piedmont for any part of Browning Hall that was destroyed by the fire to be a "frivolous and unfounded refusal in law." Specifically, Transportation cannot reasonably take the position that because one Court of Appeals case [found] a business-risk exclusion to be clear and unambiguous, all cases involving business-risk exclusions are forever to be interpreted as clear and unambiguous.

While Transportation will surely view this decision as harsh, it should recall that it did not hire outside counsel to review the case or advise it until Piedmont had threatened it with bad-faith litigation. Given the complexity of these business-risk exclusions, the Court finds it highly doubtful that Transportation could have performed any detailed legal research as it failed to hire a lawyer until long after it had unilaterally decided the exclusion shielded it from any liability whatsoever. . . .

Transportation must rely on the record in its current state and there simply is no evidence to rebut Piedmont's allegations of "bad faith." By stubbornly relying on its exclusion and failing to offer any evidence to support its position, Transportation chose the riskiest of all litigation strategies and must suffer the consequences of such a strategy.

We agree with the trial court that Transportation having failed to set forth any defense to a determination of bad faith other than its meritless reliance on the business-risk clauses of the policy, a finding of bad faith as a matter of law was eminently justified. The trial court's order granting summary judgment to Piedmont on the issue of liability under OCGA § 33-4-6 is therefore affirmed.

3. Finally, we conclude that the conduct of Transportation throughout this litigation and on this appeal requires the assessment of frivolous appeal penalties under Court of Appeals Rule 15 (b). Despite receiving an exhaustive, thoroughly sourced, and detailed order from the trial court explaining every aspect of its ruling, Transportation proceeded with an appeal not only of coverage in this action but even its duty to undertake a defense of Piedmont. The trial court warned Transportation that this was not a "close case," and we agree.

As the briefs of appellee and amici show, Transportation in effect sought a radical change in long-standing Georgia law regarding business-risk exclusions, without acknowledging that its interpretation would accomplish such a change — in fact asserting that its radical interpretation *was* the law. The weakness of Transportation's position is highlighted by its reliance on a misreading of a single Georgia decision while ignoring the substantial body of law in opposition, as well as its failure to present any evidence below to support its factual contentions. Appellant's appeal in the face of controlling law as to which there was "no reasonable doubt" justifies the award of attorney fees under Court of Appeals Rule 15 (b). See *Enviro Pro v. Emanuel County*, 265 Ga. App. 309, 315 (4) (593 SE2d 673) (2004).

In addition, ignoring a trial court's warnings regarding the lack of merit of a claim supports an assessment of frivolous appeal penalties. In *Pitts Properties v. Auburn Bank*, 274 Ga. App. 538 (618 SE2d 171) (2005), the trial court expressly warned appellants, "This is a frivolous action. (You) should not be in court." (Punctuation omitted.) Id. Because "[a]ppellants ignored the trial court's fully justified warning and prosecuted this wholly frivolous appeal," id. at 538-539, we imposed the then-maximum penalty allowed by Court of Appeals Rule 15 (b) in full against each appellant and against their appellate counsel as well. Id. See also *Austin v. Austin*, 292 Ga. App. 335-336 (664 SE2d 780) (2008).

In Case No. A09A1200, therefore, we assess frivolous appeal penalties pursuant to Court of Appeals Rule 15 (b), in the amount of $2,500 against appellant and $2,500 against its appellate counsel. Upon return of the remittitur, the trial court is directed to enter a $5,000 judgment in favor of Piedmont Construction Group, LLC in the form of a $2,500 penalty against Transportation Insurance Company and a $2,500 penalty against its appellate counsel.

## Case No. A09A1201

In Case No. A09A1201, Transportation appeals the trial court's separate and later order determining an amount of bad faith penalties and attorney fees under OCGA § 33-4-6 in connection with its failure to fulfill its duty to defend Piedmont.[3] This appeal does not address the underlying merits of the assessment, but raises various procedural and technical objections to the trial court's award.

4. OCGA § 33-4-6 (a) provides in pertinent part: "The amount of any reasonable attorney's fees shall be determined by the trial jury," with the proviso that "the trial court shall have the discretion, if it finds the jury verdict fixing attorney's fees to be greatly excessive or inadequate, to review and amend the portion of the verdict fixing attorney's fees without the necessity of disapproving the entire verdict." Transportation asserts, and Piedmont agrees, that the trial court was premature in determining the amount of the penalty without first submitting it to a jury as required by the statute. Piedmont concedes that the trial court erred in determining an amount of attorney fees under OCGA § 33-4-6 without first submitting the question to a jury as required by subsection (a) of that Code section. We therefore reverse as to that issue only.

---

[3] While we observed in *Atlantic Title Ins. Co.*, supra, 287 Ga. App. at 395-396, that ordinarily the clear language of the statute provides for "a payment of either 50 percent of the amount of the loss . . . or $5,000, whichever was greater," id. at 396, in this case the amount of the loss with respect to "reasonable expenses" under the terms of the policy has yet to be determined. See Division 6, below.

5. This decision renders moot Transportation's claim that the trial court erred in concluding that it retained jurisdiction to consider the amount of OCGA § 33-4-6 penalties. It also renders moot Transportation's contention that the award under OCGA § 33-4-6 could not include amounts expended in asserting Piedmont's claims against its excess insurer, as the apportionment and amount of such penalties must be determined by a jury as provided by statute.

6. Transportation also asserts that its liability under OCGA § 33-4-6 should not include attorney fees and expenses incurred by Piedmont because of Transportation's failure to assume its duty to defend. However, OCGA § 33-4-6 (a) provides:

> In the event of *a loss which is covered by a policy of insurance* and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, *not more than 50 percent of the liability of the insurer for the loss* or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer. . . .

(Emphasis supplied.)

Transportation contends that the costs of defense expended by Piedmont because Transportation refused a defense are not recoverable under this Code section because they are not "reasonable attorney's fees for the prosecution of the action against the insurer" as provided by OCGA § 33-4-6 (a). But Piedmont does not seek recovery under the attorney fee provision of this statute, nor as damages for breach of contract, but as an element of "loss which is covered by [the] policy of insurance" and thus subject to up to a 50 percent assessment as a bad faith penalty under OCGA § 33-4-6. And, as Piedmont notes, the Transportation policy provides that it will "have the right and duty to defend the insured against any 'suit' seeking those damages" covered by the policy. The policy also provides that Transportation

> will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>
> a. All expenses we incur. . . .
>
> d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit."

YALE LAW LIBRARY

e. All costs taxed against the insured in the "suit". . . .
These payments will not reduce the limits of insurance.

This coverage under the terms of the policy, which is expressly in addition to and above the liability limits of the policy, contemplates "all expenses" in the defense of a covered suit, as well as "all reasonable expenses" incurred by the insured in assisting in the defense, which would both of necessity include attorney fees. Transportation having obligated itself under the terms of its policy to pay these expenses, they constitute a "loss which is covered by the policy of insurance" within the purview of an OCGA § 33-4-6 award.

This conclusion is consistent with the purpose of this Code section. It is certainly possible that an insured may obtain, by a vigorous defense on its own behalf, a reduced verdict or a favorable settlement, thereby reducing the amount of damages owed to the plaintiff and in turn the amounts which its liability insurer would be obligated for under its policy. It is therefore unreasonable to conclude that an insurer may avoid its obligations under the contract of insurance by refusing to fulfill its duty to defend and then contend that the amounts expended by its insured in defending its own case are not recoverable under the terms of the policy or under OCGA § 33-4-6 (a). This enumeration of error is without merit. The amount of such penalty must, of course, as noted in Division 4, above, be determined by a jury.

### Case No. A09A1202

Transportation appeals the trial court's order setting a supersedeas bond in the amount of $600,000 for its appeal of the trial court's grant of attorney fees and bad faith penalties. That appeal having been resolved, the appeal as to the supersedeas bond is dismissed as moot. *Almonte v. West Ashley Toyota*, 281 Ga. App. 808, 810 (4) (637 SE2d 755) (2006).

*Judgment affirmed in Case No. A09A1200. Judgment affirmed in part and reversed in part in Case No. A09A1201. Appeal dismissed as moot in Case No. A09A1202. Phipps and Bernes, JJ., concur.*

DECIDED NOVEMBER 13, 2009 — 

*Buckley Brown, Dennis A. Brown*, for appellant.
*James, Bates, Pope & Spivey, Duke R. Groover, G. Grant Greenwood, Stephen L. Dillard*, for appellee.
*Thurbert E. Baker, Attorney General, R.O. Lerer, Deputy Attorney General, Denise E. Whiting-Pack, George S. Zier, Senior Assistant*

*Attorneys General, Patrick J. Wielinski*, amici curiae.