367 So.2d 133 (1979)
GOLDSBERRY OPERATING COMPANY, INC., Plaintiff and Appellee,
v.
CASSITY, INC., Defendant and Appellant.
No. 13745.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1979.
Bodenheimer, Jones, Klotz & Simmons, Shreveport, for defendant and appellant.
*134 Greene, Ayres & Mayo, Cook, Clark, Egan, Yancey & King, Shreveport, for plaintiff and appellee.
Before BOLIN, MARVIN and JONES, JJ.
JONES, Judge.
Cassity appeals from a judgment rejecting its third party demand against its general liability insurer that the policy of insurance covered its liability for damage done to Goldsberry's oil and gas well by Cassity. We affirm.
Cassity was hired by Goldsberry to perforate ten feet of the well with an explosive gun at a depth of some 8,000 feet. While the gun was being lowered to the desired depth, it prematurely exploded at 6,900 feet, causing some $10,000 in damages.
The policy excludes coverage for property damage done to "that particular part of any property, not on premises owned by or rented to the insured [Cassity] upon which operations are being performed by . . . . the insured at the time of the property damage . . ." This exclusionary language is of recent origin in the Broad Form Property Damage Coverage used by Aetna Casualty and Surety Company, third party defendant here. This form is dated January 1974. The exclusionary language in this form differs from that construed in Hendrix Electric Company, Inc. v. Casualty Reciprocal Exchange, 297 So.2d 470 (La.App. 2d Cir. 1974). Hendrix recognized the general rule that exclusionary provisions of insurance policies are to be strictly construed.
We are called on to construe the quoted provision to determine whether Cassity was performing its operation solely upon the ten feet Cassity intended to perforate at the 8,000 foot level (as Cassity contends) or whether Cassity was performing its operation upon the tubing (as Aetna contends).
The only case coming to our attention which interprets the policy language in question is from the Supreme Court of Tennessee.[1] There the contractor was hired to install two circuit breakers in an existing electrical switchboard. The contractor negligently shorted the entire board which caught fire and blew up. The court emphasized that the switchboard, although composed of many parts, was nonetheless, a complex, self-contained, collective unit which constituted a single item of property. It held the switchboard to be "that particular part of the property upon which operations [were] being performed" and declined to limit the exclusion to the one area of the switchboard where the contractor was installing the circuit breakers.
Cassity argues by analogy that the tubing which was damaged at 6,900 feet was nothing more than a vertical highway which was to be used merely to gain access to the 8,000 foot depth where the operations were to be performed. Cassity hypothesizes that the insurer would be liable in a situation where a truckload of explosives prematurely detonates on a private road going to a coal mine operation where the explosives were to be used. This may be true because the road, as Cassity indicates, is not a part of the strip mine. The result perhaps would be different if the explosives were intended to be used to extend the road and prematurely detonated, damaging a part of the completed road some ¼th mile from the site of intended use. The facts of each case will determine upon what particular part of someone's property the insured is performing its operations.
The gun was attached to a line which was on a wench installed in Cassity's truck located at the well site. The gun was lowered into the well by Cassity's operator in the truck. The electrical trigger designed to explode the charge at the desired depth was located in the truck and operated by a Cassity employee. The electricity which was to fire the gun would have travelled down the line from the truck into the well and down through the tubing to the point where the gun had been lowered. An odometer in the truck was used to determine whether sufficient line had been *135 reeled off the wench to place the gun at the desired depth.
We hold that the particular part of the property upon which Cassity was performing its operations was the entire part of the well where the gun and line traversed and through which the electricity would have passed to detonate the gun if the gun had reached the desired depth, and for this reason, the exclusion in the insurance policy precludes coverage on the damages sustained to the well when it prematurely exploded at the 6,900 foot depth.
At appellant's cost, judgment is AFFIRMED.
NOTES
[1] Vinsant Electric Contractors v. Aetna Casualty and Surety, 530 S.W.2d 76 (Tenn., 1975).