**COLUMBIA MUTUAL INSURANCE COMPANY, Respondent,**

v.

**Cliff F. SCHAUF, d/b/a Cliff's Home Repair, et al., Appellants,**

**Leonard and Elizabeth Sodaro, Defendants.**

**No. 80376.**

Supreme Court of Missouri, En Banc.

April 30, 1998.

---

**4.** *Id.*

**5.** Section 287.800, RSMo 1994.

**6.** *Bass v. Nat'l Super Markets, Inc.,* 911 S.W.2d 617, 619 (Mo. banc 1995).

Jerry W. Brumfield, Michael A. Childs, Russell Tluscik, Kansas City, for Appellants.

William M. Modrcin, Peggy A. Waddell, Kansas City, for Respondent.

COVINGTON, Judge.

Columbia Mutual Insurance Company (Columbia Mutual) brought a declaratory judgment action against Cliff F. Schauf, d/b/a Cliff's Home Repair, (Schauf) seeking a declaration of the coverage provided by an insurance policy that Columbia Mutual issued to Schauf. The trial court held that the policy provides no coverage for damage Schauf caused to a house he was painting because the policy contains an exclusion for property damage to "[t]hat particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the 'property damage' arises out of those operations." After opinion by the Missouri Court of Appeals, Western District, this Court granted transfer to consider the scope of the exclusion in Columbia Mutual's policy. The judgment is reversed, and the cause is remanded.

In May of 1994, Leonard and Elizabeth Sodaro (the Sodaros) entered into a contract with Frank Amberson (Amberson) in which Amberson agreed to build a house for the Sodaros. Amberson then entered into a subcontract with Schauf in which Schauf agreed to paint, stain, or lacquer all interior and exterior surfaces of the Sodaros' house. On October 26, 1994, Schauf was spraying lacquer onto kitchen cabinets while his employees were spraying doors in a bedroom. After Schauf completed applying the lacquer to the kitchen cabinets, he began cleaning his spray equipment inside the house before he was to go home for the day. As Schauf started his pump generator to pump lacquer thinner through the lines of his sprayer, the pump generator started a fire, which caused extensive damage throughout the house and required the replacement of sheetrock, insulation, subflooring, molding, windows, a sliding door, and textured ceilings. Amberson and his insurer spent approximately $35,000 repairing the Sodaros' house. Amberson sought recovery of these expenses from Schauf.

At the time of the fire, Schauf was insured under a business owner's liability insurance policy issued by Columbia Mutual. On August 3, 1995, Columbia Mutual filed a declaratory judgment action against Schauf, Amberson, and the Sodaros seeking a determination of whether Schauf's insurance policy covers the damage Schauf caused to the Sodaros' house. The parties filed cross motions for summary judgment. Amberson and Schauf argued that the policy covers all the damage caused by the fire. Columbia Mutual asserted that the insurance policy provides no coverage for the damage because the policy contains an exclusion for property damage to "[t]hat particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the 'property damage' arises out of those operations." The trial court granted Columbia Mutual's motion for summary judgment and denied summary judgment for Schauf and Amberson. This appeal followed.

Summary judgment is proper when the moving party has demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 74.04(c)(3). The sole issue in this case is one of law: whether the damage at the Sodaros' house is excluded from coverage by an exclusion in Columbia Mutual's policy, which provides in pertinent part:

**B. Exclusions**

**1. Applicable to Business Liability Coverage-**

This insurance does not apply to:

\* \* \* \*

k. "Property damage" to:

\* \* \* \*

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations,

if the "property damage" arises out of those operations;

■ The rules regarding the interpretation of insurance policies are well settled. The provisions of an insurance policy are read in the context of the policy as a whole. *Shaffner v. Farmers Mut. Fire Ins. Co.*, 859 S.W.2d 902, 906 (Mo.App.1993). The language in a policy is given its ordinary meaning unless another meaning is plainly intended. *See Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 508 (Mo. banc 1997).

The issue presented here is one of first impression in Missouri. To address the issue, it is necessary to understand the purpose of Columbia Mutual's policy in general and the instant exclusion in particular. The Columbia Mutual policy insures, among other things, certain property damage caused by accident to the property of others. The intent of policies such as the instant one is to protect against the unpredictable, potentially unlimited liability that can be caused by accidentally causing injury to other persons or their property. *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 405 A.2d 788, 791–92 (1979).

■ A commercial general liability policy such as Columbia Mutual's is not intended to protect business owners against every risk of operating a business. James T. Hendrick & James P. Wiezel, *The New Commercial General Liability Forms—An Introduction and Critique*, FICC Quarterly 319, 322 (Summer 1986). Some risks, termed "business risks," are considered the responsibility of the business owner, rather than the insurer; consequently, they are excluded from coverage. *Id.* Business risks are those risks that are the "normal, frequent, or predictable consequences of doing business, and which business management can and should control and manage." *Id.* Excluding such risks from coverage lowers insurance rates and provides an incentive for business owners to manage their businesses more effectively. Stewart Macaulay, *Justice Traynor and the Law of Contracts*, 13 Stan. L.Rev. 812, 825–26 (1961). "The [b]usiness [r]isk [e]xclusions

are based on the apparently simple premise that general liability coverage is not intended as a guarantee of the quality of an insured's product or work." Reference Handbook on the Comprehensive General Liability Policy: Coverage Provisions, Exclusions, and Other Litigation Issues 79 (Peter J. Neesen ed., 1995). In an attempt to give effect to the intent underlying both the coverage and exclusion provisions of commercial liability policies, courts have interpreted such policies as insuring the risk of the insured causing damage to other persons and their property, but not insuring the risk of the insured causing damage to the insured's own work. *Weedo*, 405 A.2d at 791–92.

The exclusion at issue in this case, an exclusion for property damage to "[t]hat particular part of real property on which [the insured]¹ is performing operations, if the 'property damage' arises out of those operations," is a business risk exclusion. *Glens Falls Ins. v. Donmac Golf Shaping*, 203 Ga. App. 508, 417 S.E.2d 197, 200 (1992). The instant exclusion denies coverage for more than just damage to the insured's work, however, by excluding from coverage damage to the particular part of property on which the insured is performing operations. *See Vinsant Elec. Contractors v. Aetna Casualty & Surety Co.*, 530 S.W.2d 76, 77 (Tenn. 1975) (holding that predecessor "particular part" exclusion barred coverage for damage to a switchboard upon which insured was adding circuit breakers). An explanation of why this damage to the property of others is considered to be a business risk of the insured requires an examination of the exclusion's history.

The instant exclusion is derived from an older exclusion for property in the "care, custody or control" of the insured. *See id.* As applied to real property on which the insured is performing operations, the "care, custody or control" exclusion was intended to exclude from coverage the business risk of faulty workmanship. *Royal Indem. Co. v. Smith*, 121 Ga.App. 272, 173 S.E.2d 738, 740 (1970); *Elcar Mobile Homes, Inc. v. D.K.*

---

1. Because the phrase "you or any contractor or subcontractor working directly or indirectly on your behalf" is not at issue in this case, the references to this phrase in the exclusion here and henceforth are abbreviated as "the insured."

*Baxter, Inc.,* 66 N.J.Super. 478, 169 A.2d 509, 512 (App.Div.1961). The possibility of damaging the property on which one is working is the type of routine, controllable, and limited risk that constitutes a business risk. *See* James T. Hendrick & James P. Wiezel, *The New Commercial General Liability Forms— An Introduction and Critique,* FICC Quarterly 319, 322 (Summer 1986)(defining business risks). To effectuate the exclusion's purpose, courts held that it applied to the exact property that was the subject of the insured's work when damaged, but not to property that was "incidental" to that work or to property that was the subject of the insured's work before the damage or that would be afterwards. *See Kirchner v. Hartford Accident & Indem. Co.,* 440 S.W.2d 751, 755–58 (Mo.App.1969)("care, custody or control" exclusion did not apply to building damaged over weekend even though insured worked on building on Friday and would again on Monday); *Royal,* 173 S.E.2d at 740–41 (exclusion would apply to walls of tank being painted, but not to other property in the tank); *Connie's Constr. Co. v. Fireman's Fund Ins. Co.,* 227 N.W.2d 207, 211–12· (Iowa 1975)(exclusion did not apply to completed work when steel being hoisted fell on it).

■ When a standard endorsement to the standard policy containing the "care, custody or control" exclusion was drafted, the "care, custody or control" exclusion was replaced by exclusions designed to be more narrow, thus allowing more coverage. *Vinsant,* 530 S.W.2d at 77–78. One of those provisions, the predecessor of the instant "particular part" exclusion, excluded from coverage property damage to "that particular part of any property . . . [u]pon which operations are being performed by or on behalf of the insured at the time of the property damage arising out of such operations." *Id.* at 77. This exclusion was later included in its present form in commercial general liability policies such as Columbia Mutual's policy in this case. Donald S. Malecki & Arthur L. Flitner, Commercial General Liability 42–43 (3 rd ed.1990). The instant exclusion for the "particular part of real property on which [the insured] is performing operations" is designed to eliminate coverage for the same business risk of faulty workmanship that was

excluded by the "care, custody or control" exclusion. *See Glens Falls,* 417 S.E.2d at 200; Robert J. Franco, *Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies,* 30 Tort & Ins. L.J. 785, 795 (Spring 1995).

■ Against this background, the language of the instant exclusion can be analyzed to determine if the exclusion applies and, if so, the extent of property damage that it excludes from coverage. In order for the instant exclusion to apply, Schauf must have been *performing operations on real property* within the meaning of this provision. *Perform* means "to carry out or bring about: ACCOMPLISH, EXECUTE." Webster's Third New International Dictionary 1678 (1966). *Operation* is defined as "a doing or performing of a practical work. . . ." *Id.* at 1581. In this context, *on* is "used as a function word to indicate the object of action or motion." *Id.* at 1575. *Real property* in this case, as both parties agree, means the Sodaros' house.

■ Both parties focus upon whether Schauf was performing operations on real property at the time he started the fire. Determining the applicability of the instant exclusion by examining whether Schauf was performing operations at the time of the damage is consistent with the use of the present tense "*is* performing operations." This interpretation is also consistent with that given by courts and commentators to both the instant exclusion and its predecessor, the "care, custody or control" exclusion. *Action Auto Stores, Inc. v. United Capitol Ins. Co.,* 845 F.Supp. 428, 435 (W.D.Mich. 1993) (considering "particular part" exclusion); *Kirchner,* 440 S.W.2d at 756 (considering "care, custody or control" exclusion); Reference Handbook on the Comprehensive General Liability Policy: Coverage Provisions, Exclusions, and Other Litigation Issues 134 (Peter J. Neesen ed., 1995)(stating that "'particular part' exclusion operates to preclude coverage for the damage to real property which occurs while the insured is performing his work on it"). Consequently, the instant exclusion applies if Schauf was

accomplishing work on the Sodaros' house when he started the fire.

At the time Schauf started the fire, he was in the Sodaros' dining room finishing his cleaning of the spray equipment that he used to apply lacquer to the Sodaros' kitchen cabinets thirty minutes earlier. When Schauf was cleaning his equipment, he was performing operations on real property within the meaning of this exclusion because he was performing part of his contract to paint the Sodaros' house. *See Goldsberry Operating Co. v. Cassity, Inc.*, 367 So.2d 133, 135 (La. Ct.App.1979) (holding that predecessor "particular part" exclusion barred coverage for damage insured caused to well as it was lowering gun to depth at which insured was to use gun to perforate well). As Schauf stated in his deposition, he considered cleaning the lacquer from his equipment to be part of the job; consequently, he included the time for cleaning equipment in his bid. Shauf stated that he always cleans his equipment immediately upon stopping painting for the day so that the paint or lacquer does not dry and clog the lines of his sprayer. Flushing paint or lacquer from the lines of his sprayer is an essential part of the painting job because, without it, the equipment can no longer be used to paint the house. Because Schauf was performing a part of his contract to paint the Sodaros' house, he was performing operations on real property. *See Advance Elec., Inc. v. United States Fidelity and Guar. Co.*, 818 F.2d 378, 379 (5th Cir. 1987) (holding that insured was performing operations on engine while engine was cooling overnight because cooling-stage was an essential part of the operation); *Goldsberry*, 367 So.2d at 134–35 (applying predecessor "particular part" exclusion when insured was moving equipment); *see also MFA Mut. Ins. Co. v. Berry*, 511 S.W.2d 807, 809 (Mo.1974)(stating "movement of equipment on the premises which occurs during and as a part of the work of constructing a house or garage could be considered covered carpentry operations").

■ Schauf asserts that the exclusion does not apply. He argues that he was not performing operations on real property because he was cleaning his equipment before going

home for the day, not painting the house. His urged narrow construction, however, disregards the fact that the object of his cleaning was to advance his work of painting the Sodaros' house. To construe the exclusion so narrowly that it applies only at the moment an insured is intentionally touching the real property that is the object of his work would, in effect, read the exclusion out of the policy. *See Vinsant*, 530 S.W.2d at 78 (refusing to construe exclusion so narrowly as to nullify it). It would not be reasonable to conclude, for example, that an insured is performing operations on real property when touching a paint brush to the wall, but is not performing operations on real property when dipping that brush into the can of paint. Although Schauf was not directly producing an effect on real property when he started the fire, he was, nevertheless, performing operations on the Sodaros' house. *See Goldsberry*, 367 So.2d at 134–35.

■ This conclusion gives effect to the intent of the provision at issue. The instant exclusion is designed to exclude from coverage the business risk of faulty workmanship. *Glens Falls*, 417 S.E.2d at 200 (stating that "particular part" exclusion is one of the business risk exclusions designed to exclude coverage for defective workmanship). Such risks can arise whenever the insured is performing the work, not just at the moment the insured is intentionally touching or producing an effect on real property. *See Utility Maintenance Contractors, Inc. v. West American Ins. Co.*, 19 Kan.App.2d 229, 866 P.2d 1093, 1095 (1994)(insured damaged sewage line while threading equipment through it to reach site where work was to be performed on clog). Schauf's assertion that he was not performing operations on real property within the meaning of the instant exclusion when he started the fire is without merit. This Court concludes that Schauf was performing operations on real property at the time he started the fire.

Schauf next argues that the exclusion should not apply in this case because, he asserts, the fire was an accident and not the occurrence of faulty workmanship. Schauf's assertion disregards the fact that accidental damage can constitute a business risk.

*Goldsberry,* 367 So.2d at 134–35 (excluding coverage for damage caused by gun that accidentally fired). Regardless, Schauf's argument is defeated by the language of the exclusion. The instant exclusion applies if property damage "arises out of" the insured's operations on real property. Schauf was performing operations on real property, and it is undisputed that the fire arose out of those operations. Consequently, the exclusion applies.

■ Having determined that the exclusion applies, this Court must determine its scope. The exclusion bars coverage only for the *particular part* of the real property on which the insured is performing operations. By using the words *particular part,* the provision evidences the intent to narrow the scope of the exclusion as much as possible. In other words, the subject of the insured's work is defined with great specificity.

Although it may be possible to define the scope of the instant exclusion in the abstract, applying the exclusion to real property in cases such as the instant one is far from easy. Houses and buildings can be divided into so many parts that attempting to determine which part or parts are the subject of the insured's operations can produce several reasonable conclusions. For example, the "particular part of the real property on which [the insured] is performing operations" could mean, as Columbia Mutual contends, "the entire area of real property that Schauf is scheduled to work." Under this interpretation, any damage the insured causes to property in the area in which he was contracted to work would be excluded from coverage. *See William Crawford, Inc. v. Travelers Ins. Co.,* 838 F.Supp. 157, 158–59 (S.D.N.Y.1993) (holding that "particular part" exclusion barred coverage for damage to entire apartment insured was renovating even though insured was working only on one part of apartment at time of damage); *see also Jet*

*Line Serv. v. American Employers Ins. Co.,* 404 Mass. 706, 537 N.E.2d 107, 111 (1989)(stating that location of insured at time of damage in one area or another of property on which the insured has agreed to perform operations is not significant to coverage).[2]

Another possible definition of the instant exclusion is that the "particular part of real property on which [the insured] is performing operations" is only the part of the property that is the subject of the insured's work at the time of the damage. Under this interpretation, only the damage the insured causes to the particular part of the property that is actually the object of the insured's work when the damage occurs is excluded from coverage; any other damage would not be subject to the exclusion. *See* Donald S. Malecki & Arthur L. Flitner, Commercial General Liability 43 (3 rd ed.1990):

> The purpose of [the "particular part" exclusion] is to exclude only "that particular part" of property on which work is being performed by or on behalf of the insured. For example, say that a subcontractor is erecting steel beams in a building. One of the beams falls, while being attached, and damages the work of the general contractor and other subcontractors. The general contractor, if held responsible for the loss, should be protected under its policy for damage caused by the beam, but coverage should not be expected for damage to the beam that fell....If considered real property, the beam is excluded as "that particular part of real property ... "

Each is a reasonable interpretation; thus, an ambiguity exists. *See Krombach v. Mayflower Ins. Co.,* 827 S.W.2d 208, 210 (Mo. banc 1992); *see also Aetna Casualty & Surety Co. v. Haas,* 422 S.W.2d 316, 319 (Mo. 1968) (finding "care, custody or control" exclusion ambiguous as applied to an exterminator who was fumigating a customer's house). If there are two reasonable con-

---

2. Other cases cited by Columbia Mutual do not adopt Columbia Mutual's proffered definition. These cases hold only that when an insured is performing operations on one area of a single unit of property, the unit of property is the "particular part" of property to which the exclusion applies. *Vinsant,* 530 S.W.2d at 77 (concluding that "damaged switchboard was a single, self-contained item of property"); *Utility Maintenance,* 866 P.2d at 1097 (finding that clog site and sewer pipe that had to be traversed to reach site should be viewed as a whole); *see also Goldsberry,* 367 So.2d at 134–35 (citing *Vinsant* and holding that "particular part" of property was entire part of well where gun passed in order to perforate well).

structions of an exclusion, the more narrow of the two must be applied. *See Krombach,* 827 S.W.2d at 210. Even absent the afore-stated requirement with respect to resolving ambiguities, however, this Court would reach the same conclusion by giving effect to the ordinary meaning of the exclusion's language and to the exclusion's purpose. The exclusion bars coverage for damage to "[t]hat particular part of real property on which [the insured] *is performing operations,*" not on which the insured *did perform operations, will perform operations,* or *has contracted to perform operations.* The exclusion applies to the "property *on* which [the insured] is performing operations," not to the area *in* which the insured is performing operations.

Excluding coverage only for damage the insured causes to the property on which he is actually working also is consistent with the construction given the predecessor "care, custody or control" clause, which this exclusion was designed to narrow. *See e.g., Connie's Constr.,* 227 N.W.2d at 210–12 (applying "care, custody or control" clause to steel being hoisted by crane, but not to completed work damaged when steel fell). Such a construction effectuates the exclusion's purpose of denying coverage for business risks, but also allows coverage for any accidental, consequential damage to other's property, which is not considered a business risk. *See Glens Falls,* 417 S.E.2d at 200 ("particular part" exclusion is one of the exclusions "designed to exclude coverage for defective workmanship by the insured causing damage to the project itself," but not designed to exclude tort liability for damage to other property); *see also Connie's Constr.,* 227 N.W.2d at 211–12 (damage to building when steel being hoisted by subcontractor fell on it was not loss from faulty workmanship).[3]

In accordance with the relevant maxims of construction and the language and purpose of the instant exclusion, this Court holds that the instant exclusion denies coverage for property damage to the particular part of the real property that is the subject of the insured's work at the time of the damage, if the damage arises out of those operations.

██ Applying the holding to the facts of this case compels a conclusion that the exclusion applies to any damage to the kitchen cabinets. When the damage in this case occurred, Schauf was cleaning from his spray equipment the lacquer he had applied to the kitchen cabinets. Because cleaning the lacquer was the last step in the job of lacquering the kitchen cabinets, the kitchen cabinets were the particular part of the real property that was the subject of Schauf's operations at the time of the damage. Consequently, damage to the kitchen cabinets is excluded from coverage.

The judgment of the trial court is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

All concur.

---

**3.** Relying on the intent of the business risk exclusions in general, Schauf argues for another interpretation of the instant exclusion. Schauf asserts that if the exclusion does apply, it should apply to bar coverage only for the damage to Schauf's work, his paint job. Although Schauf's contentions are consistent with the general purpose of the business risk exclusions, they contradict the language of the exclusion at issue here. The excluded damage is not for damage to "your work," which is the subject of another exclusion not at issue here, but is for damage to the "particular part of real property on which [the insured] is performing operations." Schauf's paint was not the particular part of real property on which he was performing operations; consequently, the exclusion does not bar coverage only for damage to his paint job. *See Vinsant,* 530 S.W.2d at 77.