# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3874

_____

Brake Landscaping & Lawncare, Inc.,    *
        *
      Plaintiff-Appellant,    *
        *  Appeal from the United States
   v.        *  District Court for the
        *  Eastern District of Missouri.
Hawkeye-Security Ins. Co.,    *
The Midwestern Indemnity Co.,    *
        *
      Defendants-Appellees.    *

_____

Submitted: September 22, 2010
Filed: November 1, 2010

_____

Before RILEY, Chief Judge, MELLOY and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Brake Landscaping & Lawncare, Inc. ("Brake") appeals from an adverse entry of summary judgment[1] in its action against Hawkeye-Security Insurance Company ("Hawkeye") and The Midwestern Indemnity Company ("Midwestern") arising out of the insurance companies' denial of coverage under two insurance policies. Brake sought coverage for costs incurred in re-sodding and re-seeding sections of its

_____

[1]The Honorable Thomas C. Mummert, III, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

customers' lawns after an employee mistakenly sprayed them with non-selective herbicide, which killed the grass. The district court granted summary judgment in favor of Hawkeye and Midwestern. We affirm.

## I. *Background*

Brake, a Missouri corporation, is a full-service landscaping company with primarily commercial customers. Brake purchased a commercial general liability insurance policy ("primary policy") from Midwestern, an Ohio corporation, and a commercial umbrella liability insurance policy ("umbrella policy") from Hawkeye, a Wisconsin corporation. Both policies were issued for a one-year period beginning November 1, 2007.

Between April 21 and 28, 2008, Jeffrey McGee, an employee of Brake, applied herbicide to thirteen properties owned by Brake customers. All but one of these customers had a lawn-care maintenance agreement with Brake pursuant to which Brake was obligated to apply a combination of fertilizer and herbicide to the lawns on the clients' properties. McGee was supposed to apply Lesco Momentum, a selective herbicide that kills only weeds, not grass. Instead, he mistakenly applied Lesco Prosecutor, a non-selective herbicide that kills all vegetation. Once Prosecutor has been applied, it immediately begins to kill the plant, although actual plant death usually does not occur until seven to ten days later. There are no antidotes and the effects are irreversible. On April 28, Brake discovered the mistake and identified which properties had been affected by driving by customers' properties to see if their lawns were displaying signs of dead vegetation. Brake incurred costs of approximately $1.2 million to re-sod or re-seed the dead spots.

Both insurance policies generally provided coverage for "property damage" caused by an "occurrence." Both contained an identical provision, which, in relevant part, excluded coverage for "property damage" to:

5.     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

6.     That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

(hereinafter, "business risk exclusions").[2]

In the primary policy, an exception to the subparagraph (6) exclusion restored coverage for "property damage" included in the "products-completed operations hazard." The umbrella policy also included the same "products-completed operations hazard" exception, but it applied to the subparagraph (5) exclusion, and not the subparagraph (6) exclusion. The definition of the exclusion was the same under both policies:

> Products-completed operations hazard:
> (a) Includes all . . . 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: . . .
>> (2) Work that has not yet been completed or abandoned. However, 'your work' will be deemed completed at the earliest of the following times:
>>> (a) When all of the work called for in your contract has been completed.
>>> (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
>>> (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

---

[2]In the primary policy, these exclusions are included at paragraph 2.j. In the umbrella policy, they appear at paragraph 3(o).

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Both policies defined "your work" as: "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations."

After Midwestern and Hawkeye denied coverage for the damage to Brake's clients' lawns, Brake brought this action seeking a declaratory judgment that the damage was covered under both policies. The district court denied Brake's motion for partial summary judgment and granted summary judgment in favor of Hawkeye and Midwestern, finding that there was no "occurrence" as required for coverage under the policies. Alternatively, the district court held that even if the spraying were an "occurrence," the business risk exclusions would exclude coverage. Brake filed a timely appeal. On appeal it argues that the district court erred in concluding that the spraying did not constitute an "occurrence" and in finding that the business risk exclusions applied.

II. *Discussion*

In this diversity action, state law prescribes the rules for construing the insurance policies. See St. Paul Fire & Marine Ins. Co. v. Mo. United Sch. Ins. Council, 98 F.3d 343, 345 (8th Cir. 1996). The parties do not dispute the district court's conclusion that Missouri law governs this diversity action. Under Missouri law, the interpretation of an insurance policy is a question of law. Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc., 401 F.3d 876, 879 (8th Cir. 2005). Accordingly, our review of both the district court's grant of summary judgment and its interpretation of the terms of the insurance policies is de novo. Tonicstar Ltd. v. Lovegreen Turbine Servs., Inc., 535 F.3d 790, 793 (8th Cir. 2008).

We agree with the district court that the business risk exclusions apply.[3] Subparagraph (5) excludes coverage for property damage to that particular part of real property on which Brake was performing operations, if the property damage arose out of those operations. When Brake's employee sprayed Lesco Prosecutor on Brake's clients' lawns, Brake was performing operations on those lawns. It was the employee's action in spraying a non-selective herbicide on the lawns that caused parts of the vegetation to die, which is precisely the damage for which Brake is now claiming coverage. The property damage at issue, therefore, fits squarely within the exclusion described in subparagraph (5). Similarly, subparagraph (6) excludes coverage for property damage to that particular part of property that must be restored, repaired, or replaced because Brake's work was incorrectly performed on it. Since the damage to the lawns was caused by Brake's incorrect performance of its work in spraying herbicide on the lawns, subparagraph (6) also applies.

Brake contends, however, that neither subparagraph (5) nor subparagraph (6) apply because it was not performing operations or work on the grass. Rather, the "particular part" of its clients' properties on which it was performing operations was only the weeds, and not the grass, because its intention was to spray a selective herbicide on the lawns, which would have affected only the weeds. Brake relies on Columbia Mutual Insurance Co. v. Schauf, in which the Supreme Court of Missouri considered an insurance policy containing an exclusion with identical language to subparagraph (5) and held that "only the damage the insured causes to the particular part of the property that is actually the object of the insured's work when the damage occurs is excluded from coverage; any other damage would not be subject to the exclusion." 967 S.W.2d 74, 80–81 (Mo. 1998).

---

[3]For the purposes of this appeal, we do not need to reach whether McGee's erroneous application of a non-selective herbicide was an "occurrence" because we conclude that even if Brake's claim does implicate property damage caused by an occurrence, coverage is excluded by the business risk exclusions in both policies.

In Schauf, a painter entered into a contract to paint, stain, or lacquer all interior and exterior surfaces of a residential house. Thirty minutes after finishing the job of lacquering some kitchen cabinets, the painter was cleaning his tools in the dining room when he accidentally started a fire that damaged the cabinets and other parts of the house. The court found that the damage to the kitchen cabinets fell within the exclusion but that the damage to the rest of the house did not. Schauf's kitchen cabinets are analogous to the lawns in our case, not to the weeds as Brake argues. Indeed, in Schauf, the Supreme Court of Missouri rejected the painter's argument that he was not performing operations when the fire occurred because he was cleaning his equipment and not actually lacquering the cabinets. The court explained: "Because cleaning the lacquer was the last step in the job of lacquering the kitchen cabinets, the kitchen cabinets were the particular part of the real property that was the subject of [the painter's] operations at the time of the damage." Id. at 81. Similarly, in the instant case, because spraying herbicide on the grass was an integral part of the job of killing the weeds in the lawns, the lawns were the particular part of the real property that was the subject of Brake's operations.

Schauf did not discuss the language of subparagraph (6), and this Court is not aware of any other Missouri case construing that exclusion. Applying the same logic, however, we reject Brake's argument that subparagraph (6) does not apply because McGee was performing work on the weeds and not on the grass. In two cases factually almost identical to the instant case, the Court of Appeals of Ohio has considered the scope of an exclusion with identical language to subparagraph (6). In both cases, a lawn-care company sought coverage for expenses incurred in repairing and replacing its customers' lawns after they were damaged by the erroneous application of a non-selective herbicide.[4] The Court of Appeals of Ohio determined

---

[4]When no relevant Missouri cases can be found, Missouri courts have looked outside the jurisdiction for guidance in resolving insurance disputes with factual patterns similar to the ones pending before the court. See e.g., Wood v. Safeco Ins. Co. of Am., 980 S.W.2d 43, 50 (Mo. Ct. App. 1998); Scottsdale Ins. Co. v. Ratliff,

that coverage was excluded because applying the non-selective herbicide to the lawns constituted "your work" under the policy. Therefore, any repair, restoration, or replacement of any lawn was the result of the lawn-care company's "work" and, thus, excluded from coverage. I.G.H. II, Inc. v. Selective Ins. Co. of S.C., No. WD-06-058, 2007 WL 1378379, at *3 (Ohio Ct. App. May 11, 2007); Silvers v. Erie Ins. Grp., No. 5-04-54, 2005 WL 1205560, at *3 (Ohio Ct. App. May 23, 2005). We agree with this reasoning and find that coverage is excluded under subparagraph (6) because in spraying Brake's customers' lawns with non-selective herbicide, McGee was incorrectly performing Brake's "work" and the resultant damage to the lawns is therefore excluded by the clear and unambiguous language of the policy.

Brake further contends that subparagraph (5) does not apply because Brake was no longer performing operations when the damage occurred. Brake argues that the damage did not occur until several days after McGee had finished spraying the lawns, and therefore the damage did not occur while Brake was performing operations. This argument is also foreclosed by Schauf. There, the Supreme Court of Missouri found that the exclusion "applies if [the painter] was accomplishing work on the . . . house when he *started* the fire." Schauf, 967 S.W.2d at 78–79 (emphasis added). In our case, the damage started at the moment Lesco Prosecutor was applied to the lawns. The parties do not dispute that after Prosecutor was applied, the death of the vegetation was inevitable and irreversible, even though it took several days to manifest. Therefore, McGee damaged the lawns at the moment he sprayed them, and thus, while he was performing operations within the meaning of the exclusion.

Finally, Brake contends that the damage falls within the "products-completed operations hazard" exception to the business risk exclusions.[5] We conclude that the

---

927 S.W.2d 531, 533 (Mo. Ct. App. 1996).

[5]Because we find that the "products-completed operations hazard" exception does not apply, we need not reach Brake's argument that by linking the exception to

exception does not apply in the instant case because the property damage at issue occurred when Brake's work had not yet been completed. To be a products-completed operations hazard, the damage must occur after the insured has completed its work. As discussed above, the damage to Brake's customers' lawns did not occur at some time after McGee sprayed them with non-selective herbicide. Rather, the damage occurred *while* McGee was spraying—at the moment the Prosecutor came into contact with the grass. Therefore, Brake's work was "not yet . . . completed" when the damage occurred and thus falls outside the "products-completed operations hazard" exception. See I.G.H. II, Inc., 2007 WL 1378379, at *4 (finding on identical facts that the "products-completed operations hazard" exception did not apply because the damage occurred before the lawn-care company's work was complete).

## III. *Conclusion*

Accordingly, we affirm the decision of the district court.

_____

subparagraph (5), the Hawkeye umbrella policy renders the coverage restored by the exception illusory.