COOK'S FABRICATION & WELDING,
INC., Plaintiff/Appellant,

v.

MID–CONTINENT CASUALTY CO.,
Defendant/Respondent,

and

Greystone, Inc., Defendant/Appellant.

No. ED 96465.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 31, 2012.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 19, 2012.

Application for Transfer
Denied May 29, 2012.

Theodore G. Pashos, Yvonne M. Yarnell, Jeffrey Gamber, St. Charles, MO, Steven H. Schwartz, Teresa M. Young, St. Louis, MO, for appellants.

Kurtis B. Reeg, Timothy A. McGuire, Philip Sholtz, St. Louis, MO, for respondent.

GARY M. GAERTNER, JR., Judge.

### Introduction

Appellants Cook's Fabrication and Welding, Inc. (Cook's), and Greystone, Inc. (Greystone), appeal the trial court's grant of summary judgment in favor of Mid–Continent Casualty Co. (Mid–Continent), finding no coverage for business losses caused by Cook's' negligence under the commercial general liability (CGL) policy issued to Cook's by Mid–Continent. We reverse and remand.

### Background

Continental Equipment Company (Continental) hired Cook's to install two mast radial stackers at quarries owned by La-Farge North America, Inc. (LaFarge).

Cook's installed one stacker at LaFarge's quarry in St. Charles, Missouri, and the other at LaFarge's quarry in Defiance, Missouri. Greystone manufactured the stackers, which were intended for use essentially as conveyors to move rocks and gravel from one location to another. After Cook's completed installation of the stackers, both collapsed at various times, causing damage, including hindrances to each quarry's ability to continue doing business during the time it took to repair the stackers.

Subsequently, in 2006, LaFarge and Continental filed a products liability suit against Greystone in federal district court alleging damages of "lost business, lost business opportunities, lost profits, and expenses." Greystone filed a counterclaim which included counts against Cook's for indemnification and contribution, alleging that Cook's had negligently installed the stackers.

At the time of each stacker's collapse, Cook's was insured under a CGL policy issued by Mid–Continent. This policy contained a Products–Completed Operations Aggregate limit of liability of $2,000,000. Mid–Continent initially agreed to defend Cook's in the federal lawsuit, but shortly thereafter withdrew its defense, determining that coverage for this incident was excluded by the CGL policy's "Damage To Your Work" exclusion. In April 2008, Cook's filed a declaratory judgment action in the Circuit Court of St. Charles County, Missouri, asking that the court declare any liability assigned to Cook's in the federal lawsuit to be covered by the CGL policy and that Mid–Continent had a duty to defend Cook's in the underlying federal lawsuit.

In November 2008, Greystone paid LaFarge $380,000 in settlement of the federal suit. Greystone then initiated suit in St. Charles County against Cook's for indemnification of this amount, again alleging that Cook's negligently installed the stackers and was responsible for the damages to LaFarge. Greystone alleged the money it paid satisfied LaFarge's damages for lost profits during the time the stackers were inoperable and under repair, and reduced production due to inability of replacement equipment for a period of time. Mid–Continent again declined defense of Cook's in this state lawsuit. The trial court found in Greystone's favor in December 2009 and ordered Cook's to indemnify Greystone for the full amount paid to La-Farge.

Following this, during the pendency of Cook's' declaratory judgment action, Greystone filed a cross-claim in that suit for equitable garnishment against Mid–Continent in February 2010.[1] All parties moved for summary judgment. The trial court heard each of these motions simultaneously. Mid–Continent's motion for summary judgment argued that there was no coverage under the CGL policy and Mid–Continent had no duty to defend Cook's. The trial court granted summary judgment in favor of Mid–Continent. The court consequently denied Cook's motion, and because Greystone's cross-claim was purely derivative of Cook's claim, the court dismissed Greystone's cross-claim against Mid–Continent for equitable garnishment. Both Cook's and Greystone appeal.

### Standard of Review

■ We review a trial court's grant of summary judgment de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of summary judgment concerned only Mid–Continent.

---

1. Greystone was a named defendant in that action, though Cook's' prayer for declaratory

judgment is purely an issue of law. *Id.* The meaning of language in an insurance contract is also an issue of law that we review de novo. *Burns v. Smith,* 303 S.W.3d 505, 509 (Mo. banc 2010).

## Discussion

Cook's raises three points on appeal, the latter two relating to Mid–Continent's duty to defend Cook's in the underlying litigation. Greystone's sole point on appeal is essentially the same as Cook's first point, so we address them together as Point I.

## Point I

Greystone and Cook's (collectively referred to as "Appellants") argue the trial court erred in determining that the CGL policy excluded coverage for damages caused by the collapse of the mast radial stackers at issue. Specifically, Appellants make two arguments: 1) the policy exclusion at issue, "Damage To Your Work," does not apply; or alternatively, 2) the policy is ambiguous in that the exclusion renders coverage illusory. First, we examine the policy language itself, and then we apply it to the facts here to determine whether the trial court correctly concluded that the policy excludes coverage for damage to LaFarge's business as a result of the stackers' collapses.

### Policy Interpretation

■ When interpreting insurance policies, we read individual provisions in the context of the policy as a whole. *Columbia Mut. Ins. Co. v. Schauf,* 967 S.W.2d 74, 77 (Mo. banc 1998). We give the policy language its ordinary meaning unless another is plainly intended. *Id.* "An ambiguity exists when there is duplicity, indis-

tinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Burns v. Smith,* 303 S.W.3d 505, 509 (Mo. banc 2010) (internal quotations omitted).

■ The interpretation dispute here is focused on comparing the relevant coverage provision with the "Damage To Your Work" exclusion. First, the CGL policy defines a Products–Completed Operations Hazard (PCOH) as follows:

"Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned....

The parties agree that the collapse of the stackers and subsequent damage caused fall under this PCOH definition, because it constitutes "property damage" under the policy definition,[2] the damage occurred at LaFarge's quarries which were not owned or rented by Cook's, the damage caused by the collapses of the stackers arose out of Cook's "work" as defined by the policy, and the project had been completed at the time of all of the stackers' collapses.

However, Mid–Continent argues, and the trial court agreed, that the following CGL policy exclusion applies in this instance:

This insurance does not apply to:

I. Damage To Your Work

---

**2.** The policy's exact definition of "property damage" is this:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed

to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

Mid–Continent focuses on the phrase "arising out of," arguing that because all damages at issue arose out of Cook's' work, they are not covered. Appellants respond that the exclusion applies only to "damage *to* your work" (emphasis added), and that to read the policy as Mid–Continent urges would be to render PCOH coverage illusory. We agree.

A plain reading of these two policy provisions reveals that while the PCOH definition in the instant case encompasses certain " 'property damage' ... arising out of ... 'your work,' " the exclusion addresses only the portion of that same property damage which was actually caused *to* "your work." Both contain the same language concerning property damage arising from the insured's work, and both clearly address property damage falling within the definition of PCOH. However, the exclusion contains the qualifying phrase "to your work," thereby removing from coverage property damage that falls within the PCOH definition, but that actually occurred *to* the insured's work. Any remaining property damage meeting the definition of PCOH but occurring to property that was not the insured's work, it follows, would be covered. We find no ambiguity in these provisions.

The Missouri Supreme Court has stated that CGL policies are written with an intent to allocate business risks, related to the quality of an insured's work, to the business owner rather than the insurer. *Schauf*, 967 S.W.2d at 77. In this light, "courts have interpreted such policies as insuring the risk of the insured causing

damage to other persons and their property, but not insuring the risk of the insured causing damage to the insured's own work." *Id.* The policy at issue in *Schauf* contained an exclusion to coverage for damage arising out of work the insured was performing, to "the particular part" of property upon which the insured was working at the time of the damage. *Id.* As in *Schauf*, the exclusion at issue here is limited to damage inflicted upon a particular item or items, namely, the "work" performed by Cook's.[3] Cf. *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 395 (Mo.App. E.D.2007) ("your product" exclusion did not apply because insured did not seek coverage for product itself).

In fact, an ambiguity is present only when reading the policy as Mid–Continent does. If the exclusion in fact addresses all property damage arising from "your work" and "included in the PCOH definition," then the exclusion would remove coverage for all property damage included in the PCOH definition, rendering the latter provision illusory. Such a conclusion would not be warranted even if the wording was as Mid–Continent suggests. *See Cano v. Travelers Ins. Co.*, 656 S.W.2d 266, 271 (Mo. banc 1983).

We find that the policy language is unambiguous in that coverage is granted in the PCOH definition for certain property damage arising from Cook's' work, but among this property damage, any that ensued upon Cook's' work itself is excluded from coverage.

### Application of Policy Coverage and Exclusion

Because we have determined that the key distinction between covered PCOH

---

3. Thus the main case relied on by Mid–Continent, *TGA Dev., Inc. v. N. Ins. Co. of N.Y.*, 62 F.3d 1089 (8th Cir.1995), is inapplicable. The policy at issue there excluded coverage for all "property damage ... arising from the insured's work," with no limitation as to which of this damaged property the exclusion applied. *Id.* at 1090.

property damage and excluded property damage is whether it occurred "to your work," our determination of the proper application of the policy to the facts here depends on its definition of "your work." The policy defines "your work" as:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

It is clear that the work or operation Cook's performed was installation of the mast radial stackers.[4] The materials and equipment furnished in connection with the installation would include the stackers themselves and any equipment necessary for installation. Therefore, applying the plain language of the policy, any physical damage to the stackers or related equipment Cook's installed, or any loss of use of those items, would constitute "property damage" to Cook's' "work," and would not be covered due to the policy exclusion. *Cf. Schauf,* 967 S.W.2d at 77 (concluding coverage for painter's fire causing damage to entire house excluded only damage to kitchen cabinets under policy exclusion for damage to "particular part" upon which insured was working at time insured caused damage).

■ Accordingly, because the money damages here have already been paid by Greystone, our remaining question is whether the damages paid were for property damage to the stackers and related equipment installed by Cook's or to other property. Greystone's motion for summary judgment alleges that the $380,000 paid to LaFarge "included the loss of pro-

duction capacity and property damage/loss of use of its Defiance facility as a result of the collapse of the stackers." The trial court in its judgment ordering Cook's to indemnify Greystone in the amount of $380,000, which was attached to Greystone's motion for summary judgment, found that LaFarge had suffered "lost profits as a result of periods of (i) stopped production due to collapse, removal and repair or replacement of the stacker, and (ii) reduced production due to inability of replacement equipment...." The court also found that LaFarge suffered damage in the form of inability to access materials and substantial portions of the quarry after the stacker collapsed.

These allegations taken as true describe damage to property falling under the definition of PCOH, but property that is not part of the mast radial stackers or the installation thereof. This would therefore not be excluded by the "Damage To Your Work" policy exclusion, rather these damages would be covered by the PCOH definition in the policy.[5] The trial court erred as a matter of law in granting summary judgment for Mid–Continent on this issue. Point granted.

*Point II*

■ The second point raised by Cook's is that the trial court erred in granting summary judgment in favor of Mid–Continent because Mid–Continent had a duty to defend Cook's in both the federal and state lawsuits. We agree.

4. In fact, in Mid–Continent's Memorandum of Law in Opposition to Greystone's Motion for Summary Judgment, Mid–Continent states "Cook's was hired to install the mast radial stackers, and Cook's work includes the entirety of the mast radial stackers." Mid–Continent does not allege that anything beyond the mast radial stackers is the work of Cook's.

5. Mid–Continent makes an ancillary argument within Point B of its brief that Cook's did not actually purchase PCOH coverage as part of its policy. Cook's answers this argument in its reply brief; however, as this was not a disputed issue at trial and does not affect our decision to reverse, we leave it to the trial court on remand.

"The duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case." *Columbia Mut. Ins. Co. v. Epstein,* 239 S.W.3d 667, 670 (Mo. App. E.D.2007). This duty is measured by the policy language and the allegations in the plaintiff's petition. *Id.* The insurer "must also consider the petition in light of facts it knew or could have reasonably ascertained." *Stark Liquidation Co. v. Florists' Mut. Ins. Co.,* 243 S.W.3d 385, 392 (Mo.App. E.D.2007). The duty arises when the facts evidence a claim that is potentially covered. *Epstein,* 239 S.W.3d at 670. To be relieved of this duty, the insurer must demonstrate "that there is *no possibility* of coverage." *Stark,* 243 S.W.3d at 392.

LaFarge's petition in federal court alleged that LaFarge's damages included "without limitation, their lost business, lost business opportunities, lost profits, and expenses." These broad statements do not confirm with certainty whether the damage would fall under PCOH or the "Damage To Your Work" exclusion. Because there was a possibility for potential liability, Mid–Continent's duty to defend was present.

Additionally, Greystone's petition in state court stated that the damages Greystone paid to LaFarge "included the loss of production capacity and loss of use of its facility as a result of the collapse of the stackers." Based on our foregoing discussion, this clearly alleged a loss falling under the policy's PCOH definition, but not the "Damage To Your Work" exclusion. As this was a potentially covered claim, Mid–Continent had a duty to defend unless it otherwise showed no possibility of coverage existed.

As Mid–Continent's motion for summary judgment asserted no duty to defend based solely on the exclusion of coverage, which we have found to be inapplicable, the trial court erred in granting Mid–Continent's motion for summary judgment on this point. Point II granted.

### Point III

Cook's argues in Point III that the trial court erred in denying its motion for summary judgment. We do not have jurisdiction to review this denial.

The denial of a summary judgment motion is interlocutory, and thus not a final appealable order. *Wilson v. Hungate,* 434 S.W.2d 580, 583 (Mo.1968). This Court has recognized the ability to review such an order in the limited circumstance where the merits of the motion are inextricably intertwined with the issues of an appealable order of summary judgment in favor of another party. *See Kaufman v. Bormaster,* 599 S.W.2d 35, 38 (Mo.App. E.D. 1980). However in *Kaufman,* while this Court also considered dual motions for summary judgment, as we do here, in reversing and remanding the grant of summary judgment, this Court found that the two motions were not sufficiently intertwined to merit review of the denied motion for summary judgment. *Id.*

We have determined the CGL policy here would cover the damage that took place here to property other than Cook's' "work," but that claims related to damage *to* Cook's' work would be excluded. We do not find Cook's' motion, which requests declaration of Mid–Continent's duty to defend and indemnify in all past, present, and future suits related to the failure of the stackers, to be sufficiently intertwined with the issues we have considered to merit our review. Point denied.

### Conclusion

The trial court erred in granting summary judgment in favor of Mid–Continent because the CGL policy's exclusion for "Damage To Your Work" did not apply to

alleged damage to property that was not Cook's' "work." In this light, based on our finding that the state and federal petitions alleged potentially covered claims, the trial court erred in determining Mid–Continent had no duty to defend Cook's in either suit. We reverse the trial court's grant of summary judgment to Mid–Continent and remand for a determination of the amount of damages to property that was not Cook's' work and was thus covered by the policy. Accordingly, we reverse the trial court's dismissal of Greystone's derivative cross-claim against Mid–Continent.

CLIFFORD H. AHRENS, P.J., and ROY L. RICHTER, J., concur.