# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3927

_____

Electric Power Systems International, Inc.

*Plaintiff - Appellant*

v.

Zurich American Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 21, 2017
Filed: January 26, 2018

_____

Before COLLOTON, BENTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Electric Power Systems International (EPS) appeals the district court's[1] grant of summary judgment to Zurich American Insurance Company (Zurich). EPS asserts the court erred in concluding that the commercial general liability policy issued by

---

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

Zurich to EPS did not provide coverage for damage EPS caused to an electrical transformer while working on it. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Louisville Gas and Electric Company (LGE) contracted to purchase a used electrical transformer from American Transmission Company. The transformer was a large piece of electrical equipment, weighing 403,000 pounds. It consisted of "many devices, such as bushings, the radiators, the tank, the core and coil, insulating wards, control panel, CT's control wiring, monitoring devices, gauges, [and] many components that make up a device that's able to either step up or step down voltage so electricity can operate in a efficient manner." LGE is located in Kentucky and the transformer was located in Wisconsin. In order to relocate the transformer to Kentucky, LGE hired EPS, a Missouri corporation, "to disassemble, transport, re-assemble, and test" the transformer. LGE arranged for an internal inspection of the transformer by a third party, but EPS agreed to "assist in the inspection from the outside of the unit." As part of its work to disassemble the transformer, EPS was to "remove all parts necessary to relocate the transformer[,] including but not limited to the . . . HV, LV & TV bushings." A bushing is the conduit through which electrical current flows.

The bottom of each bushing was bolted to a lead cable located inside the transformer that in turn was attached to the transformer's internal core and coil. The top portion of the bushing extended about nine feet above the top of the transformer. To remove a bushing from the transformer, it had to be disconnected from the lead cable, which required someone to go inside the transformer and remove all the bolts that attached the components. In attempting to remove the first bushing, EPS failed to remove one of the bolts connecting the bushing to the lead cable. When EPS

-2-

attempted to lift the bushing with a crane, the lead cable was pulled upward, which in turn pulled on the core and coil, damaging it.

After LGE asserted a claim against EPS for the damage to the core and coil, EPS tendered the claim to Zurich. Zurich denied coverage based on three exclusions in EPS's policy, two of which are relevant here: the j(4) "care, custody, or control" exclusion and the j(6) "particular part" exclusion. EPS sued Zurich in state court on theories of breach of contract, vexatious delay, and bad faith refusal to settle. Zurich removed the case to federal court based on diversity jurisdiction. Concluding that exclusion j(6) precluded coverage, the district court granted summary judgment to Zurich. This appeal followed.

II.

"This court reviews de novo a grant of summary judgment, construing all facts and making all reasonable inferences favorable to the nonmovant." Spirtas Co. v. Nautilus Ins. Co., 715 F.3d 667, 670 (8th Cir. 2013) (quoting General Mills Operations, LLC v. Five Star Custom Foods, Ltd., 703 F.3d 1104, 1107 (8th Cir. 2013)). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)).

The parties agree that Missouri law applies in this diversity case. Under Missouri law, "the interpretation of an insurance contract is generally a question of law, particularly in reference to the question of coverage." D.R. Sherry Constr., Ltd. v. Am. Family Mut. Ins. Co., 316 S.W.3d 899, 902 (Mo. banc 2010). It is the insured's burden to establish coverage under the policy and the insurer's burden to show that an exclusion to coverage applies. Taylor v. Bar Plan Mut. Ins. Co., 457 S.W.3d 340, 344 (Mo. banc 2015). Missouri courts strictly construe exclusionary clauses against the insurer. Id.

Exclusion j(6) of the policy excludes coverage for "property damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Put another way, exclusion j(6) excludes coverage for property damage to a particular part of any property on which EPS performed work if EPS's work was incorrectly performed on that particular part. See Columbia Mut. Ins. Co. v. Schauf, 967 S.W.2d 74, 81 (Mo. banc 1998) (holding that a similar exclusion "denies coverage for property damage to the particular part of the real property that is the subject of the insured's work at the time of the damage, if the damage arises out of those operations"). The district court concluded that at the time the coil was damaged, the particular part of the transformer on which EPS was working included the bushing, lead cable, and coil. Because the damage to the coil was caused by EPS's incorrect performance of its work—failing to detach the lead cable from the bushing—the court concluded exclusion j(6) applied to exclude coverage for the damage to the coil.

EPS argues the district court misapplied Missouri law by including the core and coil as a component of the "particular part" of the transformer on which EPS was working. According to EPS, Missouri law supports a narrow interpretation of the "particular part" exclusion. See id. at 80 (construing similar exclusion with respect to real property to "bar[] coverage only for the *particular part* of the real property on which the insured is performing operations"). EPS notes Missouri courts apply this exclusion "with great specificity." Id. According to EPS, the precise part of the property on which it was working at the time of the occurrence was the bushing, not the core and coil. EPS argues that in construing the scope of the "particular part" exclusion to exclude coverage for damage to any part of the transformer besides the bushing, the district court failed to recognize that the bushing, lead cable, and coil are separate and distinct components of the transformer.

The interpretation urged by EPS is too narrow. In Schauf, a painter subcontracted to paint, stain, or lacquer all interior and exterior surfaces of a newly

-4-

constructed house. Id. at 76. The painter accidentally started a fire while cleaning the equipment he had used to apply lacquer to kitchen cabinets thirty minutes earlier. Id. at 79. The fire damaged the cabinets and other parts of the house. Id. at 76. The painter argued that the "particular part" exclusion did not apply because he was not performing operations on real property at the time—he was cleaning his equipment, not painting the house. Id. at 79. While acknowledging that the painter was not directly performing operations on the real property when he started the fire, the Supreme Court of Missouri nonetheless rejected the painter's construction of the exclusion as too narrow. Id. As the court observed, "[i]t would not be reasonable to conclude, for example, that an insured is performing operations on real property when touching a paint brush to the wall, but is not performing operations on real property when dipping that brush into the can of paint." Id. The court found that the damage to the kitchen cabinets fell within the exclusion because cleaning the equipment was the last step in the job of lacquering the kitchen cabinets but that the damage to the rest of the house did not fall within the exception. Id. at 81.

Similarly here, we conclude that a Missouri court would find that the "particular part" of the transformer on which EPS was working included the core and coil. Disconnecting the bushing from the lead cable and core and coil was the first step of the job of disassembling the bushing, and it was an integral part of the job. See Brake Landscaping & Lawncare, Inc. v. Hawkeye-Sec. Ins. Co., 625 F.3d 1019, 1021–23 (8th Cir. 2010) (construing the same exclusion to preclude coverage for a landscaping company that applied a non-selective herbicide that killed lawns as well as weeds); see also Spirtas, 715 F.3d at 672 (concluding that "particular part of real property" exclusion precluded coverage for removing section of bridge from river when demolition did not go as planned because "dropping the bridge span into the river was an integral part of the demolition" and so "both the bridge and river were the 'particular part of real property' on which Spirtas's operations occurred"). Because the damage to the coil was caused by EPS's faulty performance of its work

in detaching the lead cable from the bushing, we agree with the district court that exclusion j(6) applies and there is no coverage for the claimed damage.[2]

## III.

Accordingly, we affirm the decision of the district court.

_____

---

[2]Because we find exclusion j(6) applies, we need not reach Zurich's argument that exclusion j(4) applies.